**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| *EX PARTE* APPLICATION OF | § | |
| ENI GHANA EXPLORATION AND | § | |
| PRODUCTION LIMITED | § | |
| *and* | § | |
| VITOL UPSTREAM GHANA | § | |
| LIMITED, PETITIONERS, | § | MISCELLANEOUS Action |
| FOR AN ORDER PURSUANT TO | § | No.: |
| 28 U.S.C. § 1782 TO OBTAIN | § | |
| DISCOVERY FOR USE IN | § | |
| FOREIGN PROCEEDINGS | § | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
***EX PARTE* APPLICATION OF ENI GHANA EXPLORATION AND**
**PRODUCTION LIMITED AND VITOL UPSTREAM GHANA LIMITED FOR AN**
**ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE**
**IN FOREIGN PROCEEDINGS**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

I. PRELIMINARY STATEMENT ........................................................... 1

II. STATEMENT OF FACTS ................................................................... 4

A. Petitioners' Development of Ghanaian Oil and Gas Fields ..................................... 4

B. Springfield's Alleged "Discovery" .......................................................................... 5

C. The technical Pre-requisites for Unitization ........................................................... 6

D. The MoE's Directives Purporting to Compel Unitization ....................................... 7

E. Springfield's Attempt to Force Compliance with the Purported Directives ........... 9

F. Petitioners' Application for Judicial Review of the Purported Directives ............ 10

G. Springfield's Reliance on the Gaffney Cline Report ............................................. 12

III. ARGUMENT ....................................................................................... 13

A. The Application Satisfies the Statutory Requirements under § 1782 .................... 15

B. The Discretionary Factors Enumerated by the Supreme Court Strongly Weigh in Favor of Granting Discovery to Petitioners ........................................................... 16

    1. Gaffney Cline/Baker Hughes are not parties to the Springfield Proceedings 16

    2. The character and nature of the Ghanaian Proceedings are consistent with the relief sought here ...................................................................................... 17

    3. The Request does not circumvent restrictions on discovery in the Ghanaian courts ........................................................................................................ 19

    4. The Request is not unduly burdensome ...................................................... 20

IV. CONCLUSION ................................................................................... 21

# TABLE OF AUTHORITIES

## Federal Cases

*Application of Eurasian Bank Joint Stock Company for Expedited Judicial Assistance Pursuant to 28 U.S.C. § 1782*, No. 3:15-mc-106-L-BN, 2015 WL 6438256 (N.D. Tex. Oct. 21, 2015) 13

*Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190 (S.D. Tex. 1995) ............................................................................................. 19

*Banoka v. Westmont Int'l Dev. Inc.*, No. 21-20434, 2022 WL 480118 (S.D. Tex. Feb. 10, 2022) ........................................................................................................ 14, 15

*Bravo Express Corp. v. Total Petrochemicals & Refining*, 613 Fed. Appx. 319 (5th Cir. 2015) 13, 15, 21

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010) ................................. 18, 19

*Gov't of Ghana v. ProEnergy Services LLC*, No. 11–9002–MC–SOW, 2011 WL 2652755 (W.D. Mo. June 6, 2011) .................................................................................. 19

*Grupo Mex. SAB de CV v. SAS Asset Recovery Ltd.*, 821 F.3d 573 (5th Cir. 2016) .................... 15

*In re Application of RSM Production Corp. v. Noble Energy Inc.*, 195 F. Supp. 3d. 899 (S.D. Tex. 2016) ............................................................................................ 14, 18

*In re Gov't of Ghana*, No. 4:11–MC–4, 2011 WL 3510951 (E.D.N.C. July 22, 2011) ............... 19

*In re of Lucille Holdings Pte. Ltd.*, No. 1:21-MC-99, 2022 WL 1421816 (D.D.C. May 5, 2022) 14

*In re O'Hare*, No. H-11-0539, 2012 WL 1377891 (S.D. Tex. Apr. 19, 2012) ............................ 20

*In re Thales DIS AIS Deutschland GmbH*, No. 3:21-mc-303-S-BN, 2022 WL 717280 (N.D. Tex. Mar. 10, 2022) ........................................................................... 16, 17, 19

*In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador v. WorleyParsons Int'l Inc.*, No. 4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) 16, 17, 19, 20, 21

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............... 13, 14, 16, 17, 18, 20

*Shell Global Solutions (US) Inc. v. RMS Engineering, Inc.*, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ................................................................................... 21

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548 (5th Cir. 2012) ................................. 14

*ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078 (2022) ............................................. 15

## Statutes

28 U.S.C. § 1782 .............................................................................................................. 14

1.      Eni Ghana Exploration and Production Limited ("Eni") and Vitol Upstream Ghana Limited ("Vitol") (together, "Petitioners"), respectfully submit this memorandum of law in support of their *Ex Parte* Application for an Order pursuant to 28 U.S.C. § 1782 to obtain discovery from Gaffney, Cline & Associates ("Gaffney Cline") and its parent company, Baker Hughes, for use in foreign proceedings pending before the courts of Ghana.

## I.      PRELIMINARY STATEMENT

2.      The targeted discovery sought in this application under 28 U.S.C. § 1782 is relevant to two judicial proceedings currently pending before the courts of Ghana.

3.      Petitioners are global energy companies who have invested their expertise and over $6.2 billion to explore, appraise, and develop an offshore oil and gas project in the Offshore Cape Three Points basin ("OCTP"), including $3.7 billion on the Sankofa Cenomanian Oilfield ("Sankofa Field").  At issue in the Ghanaian judicial proceedings is the substantive and procedural legality of purported directives from the Ministry of Energy of the Republic of Ghana ("MoE") ordering Petitioners to unitize—that is, to jointly develop, operate, and share the proceeds from—the Sankofa Field with a newly discovered, unappraised, and undeveloped offshore oil discovery called the "Afina Discovery" in the West Cape Three Points Block 2 basin ("WCTP2").

4.      These purported directives could confer a multi-billion-dollar windfall upon the two owners of the Afina Discovery: a Ghanaian company with no prior experience in oil exploration and extraction operations, Springfield Exploration and Production Limited

("Springfield"), and Ghana's state-owned oil company, the Ghana National Petroleum Corporation ("GNPC").

5.  Under Ghanaian law and international best practice, there are two technical requirements for unitization of two oilfields: (i) dynamic communication of oil between the fields, and (ii) commercial viability of the fields.  Adherence to these requirements is especially important where, as here, the MoE purports to unitize a "brown" or developed oil field (Sankofa Field) with a "green" or undeveloped oil discovery (Afina Discovery).  The Sankofa Field has already produced 58.6 million barrels of oil as a result of the good-faith efforts and investments of Petitioners, who took significant financial risks to develop the OCTP.  Obtaining a risk-free interest in the Sankofa Field (*i.e.*, a producing asset securing a regular cash flow) through the purported directives would be of obvious financial interest to both Springfield and the GNPC.

6.  Petitioners' concerns of opportunism are borne out by the fact that the MoE and Springfield have refused to produce all of the evidence underlying the purported directives.  The limited data regarding the Afina Discovery that Petitioners have seen do not even come close to establishing that the Afina Discovery is dynamically connected to the Sankofa Field or commercially viable.  Indeed, there has yet to be *any appraisal* of the Afina Discovery, which is essential for establishing commerciality.

7.  Springfield nonetheless initiated a civil suit in Ghana to compel the Petitioners' immediate compliance with the unitization directives (the "Springfield Proceedings").  At Springfield's request, the Ghanaian civil court has issued an interim order requiring Petitioners to pay into court 30% of all their funds, revenue, and monies earned from the

exploration and production of petroleum from the Sankofa Field, which has the potential to cause significant harm to Petitioners' ongoing operations.

8.  Petitioners separately filed a motion in the High Court of Ghana seeking judicial review of the purported directives (the "Judicial Review Proceedings").  The High Court summarily dismissed the Petitioners' complaint without first requiring the MoE to disclose the evidence upon which the purported directives were based (even though the Petitioners applied to the Court for the MoE to produce the documents), and that case is now on appeal.

9.  Against this backdrop, Petitioners bring this application for targeted discovery under 28 U.S.C. § 1782.  In the Springfield Proceedings, Springfield represented that Gaffney Cline prepared a report purporting to analyze the commerciality of the Afina Discovery (the "Gaffney Cline Report").  But, consistent with the overall lack of transparency present here, Springfield has declined to provide the Gaffney Cline Report to Petitioners in any form, thus shielding it from the scrutiny of Petitioners and the Ghanaian courts. Petitioners therefore seek the assistance of this Court to obtain expeditiously the Gaffney Cline Report and related information regarding its preparation.

10. Because all of the mandatory and discretionary factors for granting discovery under 28 U.S.C. § 1782 are met here, Petitioners respectfully request that this Court enter an Order granting Petitioners leave to serve the attached subpoenas on Gaffney Cline and its parent company, Baker Hughes.

## II.  STATEMENT OF FACTS

### A.  PETITIONERS' DEVELOPMENT OF GHANAIAN OIL AND GAS FIELDS

11.  Petitioner Eni is the Ghanaian subsidiary of Eni S.p.A., an Italian energy company that operates in the exploration and production, refining and marketing, chemical and energy transition sectors.[1]  Petitioner Vitol is the Ghanaian subsidiary of Vitol Holding B.V., a Dutch energy and commodities company that is ultimately owned by its employees.[2] Under a petroleum agreement with the GNPC and the Republic of Ghana (the "Petroleum Agreement"), Petitioners hold exclusive rights to explore, develop, and produce hydrocarbons from the OCTP, a basin off the coast of Ghana consisting of several oil and gas fields, including the Sankofa Field.[3]

12.  Beginning in 2006 and 2009 respectively, Petitioners Vitol and Eni deployed their expertise to explore and appraise the OCTP basin at significant cost and financial risk.[4] These exploration and appraisal efforts yielded rich technical data about the OCTP basin, including the delineation, properties, and characteristics of the Sankofa Field.[5]  On the basis of this data, in 2014, Petitioners prepared a Plan of Development ("PoD") for the OCTP basin, which has been continually updated, and which concludes, among other things, that the reservoir quality towards the western border of the OCTP, near the Afina

---

[1]    Valenti Declaration, ¶ 1.

[2]    Sobota Declaration, ¶ 3.

[3]    Valenti Declaration, ¶¶ 6-8.

[4]    Valenti Declaration, ¶¶ 6-7.

[5]    Valenti Declaration, ¶ 7.

Discovery, is too poor to be commercially viable.[6]  At every stage, the MoE has approved the conclusions in the Petitioners' PoD.[7]

13.     To date, Petitioners have invested more than $6.2 billion into the exploration, appraisal, and development of the OCTP.[8]  It took Petitioners two years and $370 million to explore and establish the commerciality of the Sankofa Field, which has already produced 58.6 million barrels of oil.[9]  The commercial viability of the Sankofa Field is thus now established.

**B.     SPRINGFIELD'S ALLEGED "DISCOVERY"**

14.     Another block off the coast of Ghana, the WCTP2, lies to the west of, and shares a border with, the OCTP.[10]  In 2011, the WCTP2 was relinquished by (experienced) operators who concluded that it was not commercially viable after drilling five exploration wells in the area.[11]

15.     In 2016, the WCTP2 was awarded to Springfield, a local Ghanaian company that had no prior experience in oil exploration and development operations.[12]  Before conducting *any* drilling in the WCTP2, Springfield requested that the MoE unitize the Petitioners' Sankofa Field with what it described as the "Sankofa Extension" in the WCTP2.[13]  The MoE responded by asking Springfield to drill a well near the OCTP border to make out

---

| [6]  | Valenti Declaration, ¶ 8. |
| [7]  | Valenti Declaration, ¶ 8. |
| [8]  | Valenti Declaration, ¶ 9. |
| [9]  | Valenti Declaration, ¶ 9. |
| [10] | Valenti Declaration, ¶ 10. |
| [11] | Valenti Declaration, ¶ 10. |
| [12] | Valenti Declaration, ¶ 10. |
| [13] | Valenti Declaration, ¶ 11. |

the case for unitization.[14]  Springfield in 2019 drilled a single exploration well in the WCTP2, and on that basis alone announced the "discovery" of the Afina oil discovery ("Afina Discovery").[15]  Springfield claimed that the Afina Discovery was an extension of the Sankofa Field that should be unitized.[16]  To date, Springfield has not performed an appraisal of the Afina Discovery, which is essential to establish the commercial viability necessary to support unitization.[17]

### C.   THE TECHNICAL PRE-REQUISITES FOR UNITIZATION

16.   Unitization is the development of a petroleum accumulation straddling the boundary between two (or more) contract areas as a single unit.[18]  Ghanaian law and standard international oilfield practice establish two requirements for unitization: (i) dynamic communication of oil between the fields and (ii) commercial viability of the fields.[19]

17.   Since unitization has major financial and operational consequences, it is usually decided by the oilfield operators based on a technical review of their respective oilfields.[20]  This is particularly true for "greenfield-brownfield" unitizations, where a producing reservoir is unitized with an undeveloped discovery, since there is otherwise a risk that the owners of the undeveloped discovery could receive a risk-free windfall if unitization takes place.[21]

---

[14]   Valenti Declaration, ¶ 11.
[15]   Valenti Declaration, ¶ 12.
[16]   Valenti Declaration, ¶¶ 11-12.
[17]   Valenti Declaration, ¶ 12.
[18]   Valenti Declaration, ¶ 11.
[19]   Valenti Declaration, ¶ 14; Kuenyehia Declaration, ¶ 8.
[20]   Valenti Declaration, ¶ 14.
[21]   Valenti Declaration, ¶ 15.

To guard against this, and to ensure that unitization will in fact result in optimal resource recovery, the two requirements of unitization must be supported by clear evidence.

**D.    THE MoE'S DIRECTIVES PURPORTING TO COMPEL UNITIZATION**

18.    The MoE has issued three directives purporting to unitize the Afina Discovery and the Sankofa Field, as follows:

19.    *First*, on April 9, 2020, the MoE issued a letter (the "Purported April 9 Directive") directing the Petitioners and Springfield to begin discussions to unitize the Afina Discovery and Sankofa Field on the basis that they were "one and the same."[22]   The Purported April 9 Directive cited—but did not exhibit—three sources to support this conclusion, none of which were independent.[23]

20.    *Second*, the MoE issued another letter dated October 14, 2020 (the "Purported October 14 Directive"), which again required unitization of the Sankofa Field and Afina Discovery.[24] The Purported October 14 Directive required Petitioners to give the WCTP2 operators the majority of the past and future profits from the Sankofa Field, which Petitioners had discovered and developed at their expense and risk.[25]   As before, the Purported October 14 Directive was based on an evaluation that was not independent because it was conducted by the GNPC, which would gain financially from unitization given its interest in the Afina Discovery,[26] and that was also technically and logically deficient.[27]

---

[22]    Valenti Declaration, ¶ 16.
[23]    Valenti Declaration, ¶ 16.
[24]    Valenti Declaration, ¶ 17.
[25]    Valenti Declaration, ¶ 17(iii).
[26]    Valenti Declaration, ¶ 17.

21.    *Third*, on November 6, 2020, the MoE issued a third letter (the "Purported November 6 Directive") which purported to impose further terms for unitization.[28]

22.    Petitioners believe that the Purported Directives violate Ghanaian law, petroleum industry best practices, and basic principles of due process for at least the following reasons:

(i)    They were issued on Springfield's request, without prior consultation with Petitioners, and Petitioners (which face significant prejudice due to the Purported Directives) were given no opportunity to comment on the Directives or the technical basis of the unitization terms before they were ordered, as is customary in the industry.[29]

(ii)    They did not disclose all of the information on which they are purportedly based,[30] which impedes Petitioners' ability to assess and challenge them as needed.

(iii)    They did not provide reasons for their conclusions and neither identified the technical pre-requisites for unitization nor explained how they have been met.[31] This further impedes Petitioners' ability to assess and challenge them.

(iv)    They did not rely on objective evidence, misleadingly describing the GNPC reports on which they are based as "independent," even though GNPC indirectly

---

[27]    Valenti Declaration, ¶ 19(iii).
[28]    Valenti Declaration, ¶ 18.
[29]    Valenti Declaration, ¶ 16.
[30]    Valenti Declaration, ¶ 19.
[31]    Valenti Declaration, ¶ 16.

holds a significant ownership stake in the Afina Discovery, the value of which would increase substantially if unitization were to take place.[32]

23.     In short, the Purported Directives would expose Petitioners to the risk of being forced to develop the potentially uncommercial Afina Discovery, while granting Springfield a windfall in the form of past and future profits from the Sankofa Field, which was explored and appraised at the Petitioners' risk and expense.  This is illegal and plainly inequitable.  The MoE has not disclosed all of the evidence upon which the Purported Directives are based, and that which it has disclosed is insufficient to establish the two requirements for unitization.   It is also troubling that the Purported Directives retroactively redistribute the Petitioners' profits to a Ghanaian company with no prior relevant experience and to the state-owned Ghanaian national oil company.  The dubious nature of all of this is heightened by the lack of transparency and the well-documented problems with the reliable application of the rule of law in Ghana.[33]

E.     SPRINGFIELD'S ATTEMPT TO FORCE COMPLIANCE WITH THE PURPORTED DIRECTIVES

24.     On July 10, 2020, while discussions with Petitioners were ongoing, Springfield preemptively brought a claim before the High Court of Ghana seeking to compel Petitioners to comply with the Purported April 9 Directive and unitize the Sankofa Field

---

[32]     While the GNPC holds a 20% interest in OCTP oil fields including the Sankofa Field, it has the option to acquire a larger, 33% interest in WCTP2 discoveries including the Afina Discovery.  Valenti Declaration, ¶¶ 6, 10.  The GNPC therefore stands to gain from the transfer of value from OCTP to WCTP2.

[33]     *See, e.g.*, Transparency International, Ghana, available at: https://www.transparency.org/en/countries/ghana; Heritage Foundation, Ghana, available at: https://www.heritage.org/index/country/ghana; U.S. Department of State, Country Report on Human Rights Practices in Ghana, 2021, pp. 1, 15, available at: https://www.state.gov/wp-content/uploads/2022/03/313615_GHANA-2021-HUMAN-RIGHTS-REPORT.pdf.

and Afina Discovery (the "Springfield Proceedings").[34]  This case is currently at the stage of written pleadings before the High Court and the record is still open for the admission of new evidence.[35]

25.  Springfield in its October 22, 2021 Reply in these proceedings made reference to a "Competent Persons Report" prepared by Gaffney Cline (the "Gaffney Cline Report") that allegedly "analyz[ed] and evaluat[ed] the data on the Afina 1X discovery," "deemed the Adina [sic] discovery commercial," and concluded that the Afina Discovery likely contained 593 million barrels of petroleum.[36]  Despite this, Springfield has never provided the Gaffney Cline Report to Petitioners.

26.  In these proceedings, Springfield sought and the High Court granted an interim order for preservation of funds, directing Petitioners to deposit into court 30% of all their funds, revenue, and monies earned from the exploration and production of petroleum from the Sankofa Field.[37]  Petitioner Vitol and Petitioner Eni's appeals against this order are pending before the Court of Appeal and the Supreme Court, respectively.[38]

**F.  PETITIONERS' APPLICATION FOR JUDICIAL REVIEW OF THE PURPORTED DIRECTIVES**

27.  On April 12, 2021, Petitioners brought a claim against the Ghanaian Attorney General and Ministry of Justice before the High Court challenging the legality and constitutionality of the Purported October 14 and November 6 Directives (the "Judicial

---

[34]     Kuenyehia Declaration, ¶ 13.
[35]     Kuenyehia Declaration, ¶ 22.
[36]     Kuenyehia Declaration, ¶ 14.
[37]     Kuenyehia Declaration, ¶ 19.
[38]     Kuenyehia Declaration, ¶ 19.

Review Proceedings").[39]  Springfield participated in these proceedings as an interested party.[40]

28.     On October 1, 2021, given the MoE's failure to substantiate the Purported Directives, Petitioners brought a motion seeking production of certain documents upon which the MoE based the Purported October 14 and November 6 Directives, including data from the Afina 1X Well and the Petroleum Commission's assessment of that data.[41]

29.     On October 21, 2021, the High Court summarily dismissed the Judicial Review Proceedings and the motion for production.[42]  In a two-page order regarding the judicial review application, the High Court reasoned that it "had all the necessary documents that could drive it to determine the judicial review application," without explaining what those documents were or acknowledging that the MoE had not provided to Petitioners all of the data upon which it purportedly relied.[43]

30.     On January 17, 2022, Petitioners appealed both summary dismissals to the Court of Appeal, noting that the High Court (i) had erred in construing the procedural grounds for dismissal; (ii) had failed to engage with the merits and evidence of the Judicial Review application; and (iii) had failed to assess the relevance and materiality of the documents sought in the motion for production.[44]  That appeal is pending. [45]  As explained in the

---

[39]     Kuenyehia Declaration, ¶ 18.  By the time Petitioners filed the Judicial Review Proceedings, the Purported April 9 Directive had been suspended.  Kuenyehia Declaration, ¶ 15.

[40]     Kuenyehia Declaration, ¶ 18.

[41]     Kuenyehia Declaration, ¶ 18.

[42]     Kuenyehia Declaration, ¶ 20.

[43]     Kuenyehia Declaration, ¶ 20.

[44]     Kuenyehia Declaration, ¶ 21.

[45]     In addition to the proceedings discussed above pending before the courts of Ghana, on August 16, 2021, Petitioners initiated arbitration proceedings against the Republic of Ghana and GNPC pursuant to the

Declaration of Ghanaian counsel Kimathi Kuenyehia, Petitioners intend to rely upon any new evidence in these appellate proceedings.[46]

## G.   SPRINGFIELD'S RELIANCE ON THE GAFFNEY CLINE REPORT

31.   In its pleadings in the Springfield Proceedings, Springfield has attempted to support its position by referring to a report by Gaffney Cline. [47]   Based on Springfield's representations, the Gaffney Cline Report contains findings in relation to the probable petroleum volumes ("P 50") in the Afina Discovery, which go to the quantity of petroleum in the Afina Discovery and, by extension, its commerciality.[48] As explained above, the commerciality of the Afina Discovery directly bears upon the legality of the unitization and is therefore relevant to the proceedings in the Ghanaian Courts.[49]

32.   To date, Springfield has not produced the Gaffney Cline Report itself or related information about its preparation.  It is of course impossible for Petitioners to assess the Gaffney Cline Report's conclusions—upon which Springfield relies—without reviewing the Gaffney Cline Report itself and understanding the process of its preparation.  This targeted § 1782 discovery is highly relevant to both the Springfield and Judicial Review Proceedings, as the Gaffney Cline Report goes to (i) the legality of the Purported Directives (at issue in the Judicial Review Proceedings) and (ii) Springfield's demand to immediately enforce the Purported Directives (at issue in the Springfield Proceedings).

---

arbitration clause in the Petroleum Agreement.  In the arbitration, which is governed by the UNCITRAL Arbitration Rules, Petitioners claim that the Purported Directives breach the Petroleum Agreement. The arbitration is currently pending.

[46]   Kuenyehia Declaration, ¶ 22.

[47]   Valenti Declaration, ¶ 21.

[48]   Valenti Declaration, ¶ 23.

[49]   Valenti Declaration, ¶¶ 13-14.

Discovery of this report is also important as a matter of basic due process given the troubling lack of transparency around the Purported Directives.

## III.     ARGUMENT

33.     The Court should grant Petitioners' *ex parte* application because it satisfies all of the statutory requirements of 28 U.S.C. § 1782, as well as the discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).[50]     Furthermore, this Court should grant this application as doing so would allow Petitioners timely discovery of documents that are highly relevant to the ongoing proceedings before the Ghanaian courts, thereby serving the statute's twin aims of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts."[51]

34.     When determining whether to grant § 1782 discovery, a federal district court must proceed in two steps.

35.     *First*, it must determine whether the statutory requirements of § 1782 have been met: whether (i) the person from whom discovery is sought "resides or is found" in the district of the district court to which the application is made; (ii) the discovery is "for use in a

---

[50]     *See* In re *Application of Eurasian Bank Joint Stock Company for Expedited Judicial Assistance Pursuant to 28 U.S.C. § 1782*, No. 3:15-mc-106-L-BN, 2015 WL 6438256 at *1 (N.D. Tex. Oct. 21, 2015) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte* ... The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3).") (quoting *Gushlak v. Gushlak*, 486 Fed. Appx. 215 (2d Cir. 2012)).

[51]     *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). *See also Bravo Express Corp. v. Total Petrochemicals & Refining*, 613 Fed. Appx. 319, 321-22 (5th Cir. 2015) ("The bounds of the district court's discretion are informed by the twin aims of the statute, which are to provide efficient means of assistance [in our federal courts] to participants in international litigation . . . and to encourage foreign countries by example to provide similar means of assistance to our courts.") (internal citations omitted).

proceeding in a foreign or international tribunal;" and (iii) the application is made by a foreign or international tribunal or "any interested person."[52]

36.     *Second*, if the statutory requirements are met, the district court must then determine whether to exercise its discretion to grant the request.[53]  The Supreme Court's decision in *Intel* identifies as relevant the following discretionary factors: (i) whether the person from whom discovery is sought is a participant in the foreign proceedings;[54] (ii) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government, court, or agency to assistance from the U.S. federal courts; (iii) whether the § 1782(a) request is an attempt to bypass restrictions on the discovery process before that tribunal;[55] and (iv) whether the request is unduly burdensome.[56] These factors need not be weighed equally: the district court has discretion to weigh them as it deems appropriate.[57]

37.     This Application satisfies the statutory requirements, and the discretionary factors all weigh in favor of granting the Application.

---

[52]    28 U.S.C. § 1782(a). *See also Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012).

[53]    *Tex. Keystone, Inc.*, 694 F.3d at 554 (5th Cir. 2012); *In re Application of RSM Production Corp. v. Noble Energy Inc.*, 195 F. Supp. 3d 899, 902 (S.D. Tex. 2016) (citing *Tex. Keystone, Inc.*, 694 F.3d at 553 (5th Cir. 2012)).

[54]    *Intel Corp.*, 542 U.S. at 264 (2004).

[55]    *Id.* at 264-65.

[56]    *Id.* at 265.

[57]    *In re of Lucille Holdings Pte. Ltd.*, No. 1:21-MC-99, 2022 WL 1421816 at *7 (D.D.C. May 5, 2022) (citing *In re Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014)) ("The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor do they dictate whether any particular factor should take preceden[ce]."). *See also, e.g. Banoka v. Westmont Int'l Dev. Inc.*, No. 21-20434, 2022 WL 480118 at *5 (S.D. Tex. Feb. 10, 2022) ("On this record, however, in light of the extent to which the other factors favor Westmont, the Court considers the receptivity factor to be of minimal importance.").

### A.      THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS UNDER § 1782

38.      Each of the statutory requirements under § 1782 is satisfied here.

39.      *First*, both Gaffney Cline and Baker Hughes "reside[]" or are "found" in this district:[58] Houston is the principal (indeed sole) place of Gaffney Cline's North American business,[59] and is the home of the corporate headquarters of Baker Hughes—Gaffney Cline's parent company.[60]  Accordingly, the Court may order discovery from Gaffney Cline and Baker Hughes under § 1782.

40.      *Second*, the discovery sought here is intended "for use in a proceeding before a foreign or international tribunal."  The Springfield Proceedings are pending before the Ghanaian High Court, and the Judicial Review Proceedings are pending before the Ghanaian Court of Appeal.  The Ghanaian Courts are indisputably foreign tribunals within the meaning of § 1782.[61]  As both proceedings are ongoing, this *ex parte* application manifestly satisfies the "reasonable contemplation" element of the "for use" requirement.[62]  Further, as explained below, the evidence sought is not only "relevant" to the merits in the Ghanaian

---

[58]   *See Grupo Mex. SAB de CV v. SAS Asset Recovery Ltd.*, 821 F.3d 573, 575-77 (5th Cir. 2016) (holding that a Cayman Islands company "indisputably 'resides or is found in' the district" based on the fact that it had office space and personnel there).

[59]   *See GaffneyCline Offices*, GAFFNEY CLINE, available at:  https://www.gaffneycline.com/ (last visited July 29, 2022) (listing as its sole North American office a location at 4425 Westway Park Blvd, Houston, TX 77041).

[60]   *See Baker Hughes Holdings LLC*, BLOOMBERG, available at: https://www.bloomberg.com/profile/company/BHI:US (last visited July 29, 2022).

[61]   *See ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2088 (2022) (clarifying that "foreign tribunal" and "international tribunal" complement one another; the former is a tribunal imbued with governmental authority by one nation, and the latter is a tribunal imbued with governmental authority by multiple nations.").

[62]   *See Bravo Express Corp.*, 613 Fed. Appx. at 322-23; *Banoka*, 2022 WL 480118 at *5.

proceedings,[63] it is essential to the fair resolution of those proceedings under basic principles of due process.

41.     Finally, both Petitioners are defendants in the Springfield Proceedings and applicants in the Judicial Review Proceedings, and are thus "interested persons" within the meaning of § 1782.[64]

**B.     THE DISCRETIONARY FACTORS ENUMERATED BY THE SUPREME COURT STRONGLY WEIGH IN FAVOR OF GRANTING DISCOVERY TO PETITIONERS**

42.     Viewed individually and collectively, the discretionary *Intel* factors strongly weigh in favor of granting this Application.

**1.     Gaffney Cline/Baker Hughes are not parties to the Springfield Proceedings**

43.     Section 1782 discovery is appropriate where the discovery is sought from non-parties to the foreign proceeding, as "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."[65]

44.     Here, neither Gaffney Cline nor Baker Hughes is a party to the Ghanaian proceedings, nor is there any possibility that either will become a party in the future.  Gaffney Cline, for its part, has no presence in Ghana whatsoever.  It is therefore not possible to obtain

---

[63]     *See In re Thales DIS AIS Deutschland GmbH*, No. 3:21-mc-303-S-BN, 2022 WL 717280 at *4 (N.D. Tex. Mar. 10, 2022).

[64]     *In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador v. WorleyParsons Int'l Inc*., No. 4:19-MC-2534, 2020 WL 13412872 at *5 (S.D. Tex. Apr. 13, 2020) (quoting *Intel Corp.,* 542 U.S. at 255-56).

[65]     *Intel Corp.*, 542 U.S. at 264.

the requested discovery from the subjects of this Application through the Ghanaian Proceedings.

45.    Although Springfield has indicated that it has the Gaffney Cline Report,[66] it has not produced the Gaffney Cline Report in the Springfield Proceedings.    Moreover, Springfield has not indicated that it has the underlying annexes, work product, communications, and instructions relating to the creation of the Gaffney Cline Report, which also are sought in this Application from Gaffney Cline and Baker Hughes.    This additional discovery is therefore outside the "jurisdictional reach" of the Ghanaian courts.[67]  In all events, § 1782 "does not require [an applicant] to seek discovery in the foreign jurisdiction before seeking the assistance of a district court."[68]  One of its purposes is to provide "efficient assistance" to participants to obtain discovery for use in international litigation.[69]

46.    Therefore, absent assistance from this Court, it would likely be impossible for Petitioners to obtain all of the relevant discovery that they seek here.

**2.    The character and nature of the Ghanaian Proceedings are consistent with the relief sought here**

47.    The second discretionary factor—which considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

---

[66]    Valenti Declaration, ¶ 21.

[67]    *See In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador*, 2020 WL 13412872 at *5 (S.D. Tex. Apr. 13, 2020).

[68]    *In re Thales DIS AIS Deutschland GmbH*, 2022 WL 717280 at *5 (N.D. Tex. Mar. 10, 2022) (quoting *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017 WL 3780213 at *8 (N.D. Tex., Aug. 31, 2017)).

[69]    *Intel Corp.*, 542 U.S. at 252.

government or the court or agency abroad to U.S. federal-court judicial assistance"[70]— further weighs in favor of granting the discovery.

48.     In considering this factor, the Supreme Court has held that § 1782 discovery is proper where the evidence sought is relevant to the foreign proceedings[71] and where there is no "clear directive" from the foreign tribunal "that it 'would reject evidence' produced in the United States."[72]

49.     As noted above, the discovery sought in this Application is directly relevant to whether the two requirements for unitization exist here, a core issue in both Ghanaian proceedings.   According to Springfield's pleadings in the Springfield Proceedings, the Gaffney Cline Report addresses the Afina Discovery's probable petroleum volumes, which goes to its commercial viability.   The Gaffney Cline Report is therefore directly relevant to both proceedings.

50.     Further, there is nothing to suggest that the Ghanaian courts would be opposed to the international judicial assistance sought by this Application.   In order to reject a § 1782 request on this ground, there must be "authoritative proof"—in the form of a "judicial, executive, or legislative declaration"—that the Ghanaian courts would be offended if the application were granted or that the Ghanaian courts would be hostile to the discovery so

---

[70]     *Id.* at 264.

[71]     *Id.* at 246.

[72]     *See id.* at 243-44 ("Moreover, the Court questions whether foreign governments would be offended by a domestic prescription permitting, but not requiring, judicial assistance. A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from United States federal courts"); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010); *see also In re Application of RSM Production v. Noble Energy Inc.*, 195 F. Supp. 3d 899, 906 (S.D. Tex. 2016) ("Thus, while the court should not base its § 1782(a) decision on whether this discovery would be allowed in Israel, it may consider Israeli restrictions and whether this request is an attempt to thwart those restrictions.").

obtained.[73]  There exists no authoritative proof that the Ghanaian Courts would reject the discovery sought here.  To the contrary, the Government of Ghana has itself sought discovery multiple times under § 1782 for documents to be submitted in proceedings before the Ghanaian High Court.[74]  Those requests have been granted because, *inter alia*, the federal district courts found no reason to doubt that the Ghanaian High Court would be receptive to such discovery.[75]

**3.      The Request does not circumvent restrictions on discovery in the Ghanaian courts**

51.      As the Fifth Circuit has held, § 1782 discovery is appropriate where "the record does not clearly demonstrate that [the petitioner] is attempting to evade [domestic] restrictions on discovery."[76]  That is the case here.  Timely discovery of the Gaffney Cline Report and its supporting documents is necessary in order to ensure the fair resolution of the Ghanaian Proceedings, particularly since Springfield cited, but did not produce, the Gaffney Cline Report in the Springfield Proceedings.

---

[73]   *In re Thales DIS AIS Deutschland GmbH*, 2022 WL 717280 at *5 (N.D. Tex. Mar. 10, 2022) (quoting *LEG Q LLC*, 2017 WL 3780213 at *9 (N.D. Tex. Aug. 31, 2017)). *See also Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 196 (S.D. Tex. 1995) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).

[74]   *See In re Gov't of Ghana*, No. 4:11–MC–4, 2011 WL 3510951 at *6 (E.D.N.C. July 22, 2011) ("After a review of the relevant factors, the Court finds that Ghana's § 1782 application should be granted").

[75]   *See Gov't of Ghana v. ProEnergy Services LLC*, No. 11–9002–MC–SOW, 2011 WL 2652755 at **4-5 (W.D. Mo. June 6, 2011) (noting that "Balkan has not provided the Court with reliable evidence that the High Court of Ghana would reject the evidence" and that "Balkan has not shown that the arbitral tribunal or High Court of Ghana would be unreceptive to the materials discovered under Ghana's § 1782 request.").

[76]   *Ecuadorian Plaintiffs*, 619 F.3d at 377 (5th Cir. 2010). *See also In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador*, 2020 WL 13412872 at *6 (S.D. Tex. Apr. 13, 2020).

52.     Moreover, Petitioners intend to submit the discovery sought here in both Ghanaian proceedings.[77]

**4.      The Request is not unduly burdensome**

53.     Finally, § 1782 discovery is appropriate where a request is not unduly burdensome.[78]  A "court may find that a subpoena presents an undue burden when the subpoena is facially overbroad,"[79] for instance where it "seek[s] all documents concerning the parties to the underlying action, regardless of whether those documents relate to that action and regardless of date; the requests are not particularized; and the period covered by the requests is unlimited."[80]

54.     This Application is the exact opposite.  It is targeted upon (i) a single technical report; (ii) the annexes and work product upon which that report relies; and (iii) internal communications and instructions about that report among and between its authors and related external communications.  This is a focused request for discrete and narrow information bearing upon a single report.[81]

---

[77]     Kuenyehia Declaration, ¶ 22 ("Petitioners intend to use the requested discovery in both Ghanaian proceedings.  The Springfield Proceedings are at the pre-trial pleadings stage before the High Court and the evidentiary record is still open.  During the trial, which will begin after the close of pleadings, Petitioners may adduce the Gaffney Cline Report as evidence in support of its case.  The Judicial Review Proceedings are at the appellate stage before the Court of Appeals.  Petitioners may adduce the Gaffney Cline Report as new evidence on appeal because it is in the interests of justice to do so and, in the alternative, the report relates to facts that came to the Petitioners' attention after the High Court issued its decision.")

[78]     *Intel Corp.*, 542 U.S. at 265.

[79]     *In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador*, 2020 WL 13412872 at *6 (S.D. Tex. Apr. 13, 2020) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)).

[80]     *Id.* at *6 (S.D. Tex. Apr. 13, 2020) (quoting *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015)). *See also In re O'Hare*, No. H-11-0539, 2012 WL 1377891 at *2 (S.D. Tex. Apr. 19, 2012).

[81]     *Cf. In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador*, 2020 WL 13412872 at *7 (S.D. Tex. Apr. 13, 2020) (holding that a petition for § 1782 discovery was not unduly burdensome despite seeking "discovery on more than 20 individuals and more than 20 business entities" because the subpoena

55.     Further, the Application seeks documents that are indisputably in the possession, custody, or control of Gaffney Cline, as it is the author of the requested report.   The requested discovery is also in the possession, custody, or control of Baker Hughes, which wholly owns Gaffney Cline.[82]

56.     On information and belief, the Gaffney Cline Report was drafted following the drilling of the Afina 1X Well on October 9, 2019.[83]   As a result of its recency, it will be easy for Gaffney Cline and Baker Hughes to quickly identify and produce the Gaffney Cline Report and related documents bearing upon its preparation.   To the extent that there are any difficulties, they can readily be addressed by counsel through the ordinary processes available under the Federal Rules of Civil Procedure.[84]

## IV.     CONCLUSION

57.     For the foregoing reasons, Petitioners respectfully request that the Court grant their *ex parte* Application for an Order under 28 U.S.C. § 1782 to obtain discovery from Gaffney Cline and Baker Hughes, and grant Petitioners leave to serve the subpoenas attached as Exhibit 1 and Exhibit 2 to the Declaration of Luke A. Sobota.   Petitioners reserve the

---

limited its "requests to particular types of documents," including a limited category of "Respondent's internal documents").

[82]     *See Shell Global Solutions (US) Inc. v. RMS Engineering, Inc.*, 2011 WL 3418396 at *2 (S.D. Tex. Aug. 3, 2011) ("documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit. Under this principle, discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation.") (internal citations omitted).

[83]     *Cf. In re: Empresa Pública de Hidrocarburos del Ecuador - EP Petroecuador*, 2020 WL 13412872 at *7 (S.D. Tex. Apr. 13, 2020) (holding that a request for documents in a time period of "January 11, 2011 . . . to the present" (a period of approximately nine years at the time of the opinion) was not unduly burdensome).

[84]     *Bravo Express Corp.*, 613 Fed. Appx. at 325 (5th Cir. 2015) ("To the extent the district court's decision is based on the burdensomeness of Bravo's application, the district court is directed to consider whether Bravo's discovery request could be modified to be less burdensome. The district court remains fully empowered to exercise its discretion under the Federal Rules of Civil Procedure to resolve this dispute in any manner not inconsistent with this opinion.").

right to request the issuance of subpoenas for the testimony of Gaffney Cline and Baker Hughes representatives that may be relevant to the foreign proceedings.

Dated: July 29, 2022

Respectfully submitted,

**THE CUNNINGHAM LAW FIRM**

/s/ *Scott Douglas Cunningham*
SCOTT DOUGLAS CUNNINGHAM
Texas Bar No. 05243700
7670 Woodway, Suite 110
Houston, Texas 77063
(713) 273-8950
(713) 273-8951 (fax)
E-mail: sdc1776@peoplepc.com

ATTORNEY IN CHARGE FOR
PEITITIONERS
ENI GHANA EXPLORATION AND
PRODUCTION LIMITED; AND
VITOL UPSTREAM GHANA LIMITED

OF COUNSEL:

Luke A. Sobota
Three Crowns LLP
3000 K Street NW, Suite 101
Washington, DC 20007
(202) 540-9477
luke.sobota@threecrownsllp.com