Case 4:22-mc-01285   Document 19   Filed on 08/08/22 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
August 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ENI GHANA EXPLORATION AND PRODUCTION LTD**, *et al.*, | § § § |
| Petitioners, | § § |
| VS. | §  MISCELLANEOUS ACTION NO. 4:22-MC-01285 § |
| **GAFFNEY CLINE & ASSOCIATES, INC**, *et al.*, | § § § § |
| Respondents. | § § |

## **MEMORANDUM & ORDER**

Pending before the Court is the *Ex Parte* Application of Eni Ghana Exploration and Production Limited and Vitol Upstream Ghana Limited for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings. ECF No. 1. For the reasons set forth below, the Court **GRANTS** the Application.

### I.  BACKGROUND

Petitioners Eni Ghana Exploration and Production Limited and Vitol Upstream Ghana Limited allege the following. Petitioners are global energy companies that have invested in offshore oil and gas projects in the Offshore Cape Three Points basin ("OCTP"). ECF No. 2 at ¶ 3. Petitioners hold rights to develop hydrocarbons from the OCTP, including from the Sankofa Field. *Id.* at ¶ 11. Petitioners have spent billions of dollars developing the OCTP, and hundreds of millions of dollars developing the Sankofa Field. *Id.* at ¶ 13.

The OCTP abuts the West Cape Three Points Block 2 basin ("WCTP2"). *Id.* at ¶ 3. In 2011, the WCTP2's operators relinquished the block because it was not commercially viable. *Id.* at ¶ 14.

In 2016, Springfield Exploration and Production Limited ("Springfield") acquired an 84% interest in the block. ECF No. 11 at ¶ 10. The remaining 16% was held by the state-owned Ghana National Petroleum Corporation ("GNPC") and Explorco, a GNPC subsidiary. *Id.* Subsequently, Springfield requested that Ghana's Ministry of Energy ("MoE") "unitize" the Sankofa field with a portion of the WCTP2. *Id.* at ¶ 11. Unitization requires owners to jointly develop, operate, and share the proceeds from two or more contract areas as a single unit. *Id.*; ECF No. 2 at ¶ 3. Under Ghanaian law and international oilfield practices, unitization typically requires: (1) dynamic communication of oil between the fields; and (2) commercial viability of the fields. ECF No. 2 at ¶ 16. Unitization has serious financial and operational consequences, particularly where a producing reservoir (a "brownfield") is unitized with an undeveloped one (a "greenfield"). After all, "greenfield-brownfield" unitization may give the owners of the undeveloped portion a windfall if greenfield production falls short. *Id.* at ¶ 17. As a result, the MoE asked Springfield to drill a well near the border of the blocks to support the case for unitization. ECF No. 11 at ¶ 11. After drilling that well, Springfield announced that it discovered oil at the site (the "Afina Discovery"). *Id.* at ¶ 12. Springfield further claimed that the Afina Discovery was an extension of the Sankofa Field such that unitization was warranted. ECF No. 2 at ¶ 15.

Subsequently, the MoE issued a letter directing the Petitioners and Springfield to start discussing unitization. *Id.* at ¶ 19. The MoE based this directive on three sources: Springfield's "post-drill data," the GNPC's opinion and accompanying report, and the recommendation from the Ghana Petroleum Commission. ECF No. 11 at ¶ 16. Petitioners could not evaluate the technical basis for the directive because the MoE excluded its underlying sources from the letter. *Id.* Around six months later, the MoE directed the unitization of the Sankofa Field and Afina Discovery. *Id.*

at ¶ 17. A few weeks after that, the MoE issued a final letter that provided additional terms for unitization. *Id.* at ¶ 18.

Petitioners contend that the MoE directives "violate Ghanaian law, petroleum industry best practices, and basic principles of due process[.]" ECF No. 2 at ¶ 22. Petitioners submit that MoE improperly issued the directives without prior consultation with the impacted parties (as is apparently customary in the industry). *Id.* Petitioners also take issue with the MoE's failure to disclose evidence supporting the directives, as well the MoE's reliance on evidence that Petitioners consider biased. *Id.* Finally, Petitioners note a troubling backdrop to these proceedings: the directives "retroactively redistribute the Petitioners' profits to a Ghanaian company with no prior relevant experience and to the state-owned Ghanaian national oil company." *Id.* at ¶ 23.

Springfield, for its part, brought a claim before the High Court of Ghana seeking to compel Petitioners to comply with the directives (the "Springfield Proceedings"). *Id.* at ¶ 24. The Springfield Proceedings are currently in the written pleading stage and the record is still open. *Id.* On October 22, 2021, Springfield filed a Reply in these proceedings. *Id.* at ¶ 25. Therein, Springfield referred to a "Competent Persons Report" prepared by Gaffney Cline and Associates that allegedly "analyz[ed] and evaluat[ed] the data on the [Afina Discovery]," "deemed the [Afina Discovery] commercial," and concluded that the Afina Discovery likely contained 593 million barrels of petroleum (the "Gaffney Cline Report"). ECF No. 9 at ¶ 14. The Gaffney Cline Report is important because it speaks to the commercial viability of the Afina Discovery, which in turn affects the propriety of unitization. ECF No. 2 at ¶ 31. Nevertheless, Springfield withheld the Gaffney Cline Report. *Id.* at ¶ 25. Subsequently, Springfield obtained an interim order from the High Court that directed "Petitioners to deposit to the Court 30% of all their funds, revenue, and monies earned from the exploration and production of petroleum from the Sankofa Field." ECF

No. 9 at ¶ 19. Petitioners' appeals against this order are currently pending before the Court of Appeal and the Supreme Court. *Id.*

Separately, Petitioners brought a claim against the Ghanaian Attorney General and Minister of Justice to challenge the MoE directives (the "Judicial Review Proceedings"). ECF No. 2 at ¶ 27. Springfield participated in Judicial Review Proceedings as an interested party. *Id.* In these proceedings, Petitioners filed a motion asking the High Court to order the Attorney General and the Minister of Justice to produce the documents that the MoE relied upon when issuing the directives. *Id.* at ¶ 28. But the High Court dismissed Petitioners' motion for production because it already "had all the necessary documents that could drive it to determine the judicial review application[.]" ECF No. 9 at ¶ 20. The High Court also dismissed Petitioners' underlying claims in the Judicial Review Proceedings. ECF No. 2 at ¶ 29. Petitioners then appealed these dismissals. *Id.* at ¶ 30. Petitioners' appeal is currently pending, and Petitioners intend to introduce new evidence in the appellate proceedings. *Id.*

Now, Petitioners have filed an application in this Court under 28 U.S.C. § 1782 for production of the Gaffney Cline Report and materials related to its preparation. *Id.* at ¶ 32.

II.   **STANDARD OF REVIEW**

28 U.S.C. § 1782(a) provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part

>the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). Courts have summarized these statutory requirements as follows:

>A district court has authority to grant a § 1782 application where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015). Applications under § 1782 routinely proceed *ex parte*. *See Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").[1]

Where the § 1782 application meets the statutory requirements, the district court must still consider whether to exercise its discretion to grant the request. The Supreme Court's decision in *Intel* identifies the following factors as relevant to the district court's decision: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government, court, or agency to assistance from the U.S. federal courts; (3) whether the § 1782 request is an attempt to bypass restrictions on the discovery process before that tribunal; and (4) whether the request is unduly burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). The district court's decision should be "informed by the 'twin aims of

---

[1] At this time, the Court concludes that proceeding *ex parte* is appropriate. *In re Deposit Guarantee Fund (Ukraine)*, 2021 WL 1857090, at *1 (S.D.N.Y. Apr. 21, 2021). Respondents will have the opportunity to litigate subsequent issues via motions to quash.

the statute,' which are 'to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts.' " *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553–54 (5th Cir. 2012) (quoting *In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001)). If the district court grants the § 1782 application, the Federal Rules of Civil Procedure then govern the underlying discovery requests. *Id.* at 554.

### III. ANALYSIS

#### A. *Statutory Requirements*

The Court finds that Petitioners have met all three statutory requirements.

First, per Petitioners' Application, this judicial district is the principal place of Gaffney Cline's North American business, and home to the corporate headquarters of Baker Hughes (Gaffney Cline's parent company). ECF No. 2 at ¶ 39. Accordingly, Respondents "reside or [are] found" in this district. 28 U.S.C. § 1782(a).

Second, the discovery that Petitioners seek is intended "for use in a proceeding in a foreign or international tribunal[.]" *Id.* The Springfield Proceedings are currently pending before the Ghanaian High Court, and the Judicial Review Proceedings are currently pending before the Ghanaian Court of Appeal. ECF No. 2 at ¶ 40. The Ghanaian Courts are foreign tribunals within the meaning of § 1782, and Petitioners have demonstrated that they intend to use the requested evidence to fight against the unitization directives before those tribunals. *See Mees*, 793 F.3d at 299 ("[A]pplicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase [its] chances of success.").

6

Third, Petitioners are interested parties in the foreign proceedings because they are defendants in the Springfield Proceedings and applicants in the Judicial Review Proceedings. ECF No. 2 at ¶ 41.

The Court therefore concludes that Petitioners have met the statutory requirements.

B.  *Discretionary Factors*

The Court also finds that the discretionary factors support Petitioners' Application.

1.  The first discretionary factor

The first *Intel* factor slightly favors the Application. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding[,] . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. That is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* Still, a "respondent's connection to the foreign proceeding is part of a broader inquiry: whether the discovery is 'outside the foreign tribunal's jurisdictional reach,' and thus 'unobtainable absent § 1782(a) aid.' " *In re Kiobel*, 2017 WL 354183, at *5 (S.D.N.Y. Jan. 24, 2017) (quoting *Intel*, 542 U.S. at 264).

Here, neither Gaffney Cline nor Baker Hughes is a party to the Ghanaian proceedings, and there is no reason to think that either will become a party in the future. ECF No. 2 at ¶ 43. The fact that Respondents are not participants in the foreign proceedings militates in favor of Petitioners' request. The Court recognizes, however, that Springfield seems to have the Gaffney Cline Report. ECF No. 2 at ¶ 45. Consequently, there is a party to the Ghanaian actions that has custody over some of the materials sought here. Still, Springfield did not produce the Gaffney Cline Report in

the foreign actions, and there is no evidence that it has the other materials sought in Petitioners' Application. *See id.* ("Springfield has not indicated that it has the underlying annexes, work product, communications, and instructions relating to the creation of the Gaffney Cline Report, which also are sought in this Application from Gaffney Cline and Baker Hughes."). What's more, "Section 1782 does not require [an applicant] to seek discovery in the foreign jurisdiction before seeking the assistance of a district court." *LEG Q LLC v. RSR Corp.*, 2017 WL 3780213, at *8 (N.D. Tex. Aug. 31, 2017) (quoting *In re Application of HydroDive Nigeria, Ltd.*, 2013 WL 12155021, at *4 (S.D. Tex. May 29, 2013)). The Court therefore concludes that this factor slightly favors Petitioners' Application.

2. <u>The second discretionary factor</u>

The second *Intel* factor also favors the Application. In considering this factor, courts typically analyze whether there has been a "clear directive" from the foreign tribunal that it "would reject evidence" produced in the United States. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). A clear directive generally derives from "authoritative proof—in the form of a judicial, executive, or legislative declaration—that the foreign jurisdiction would be hostile to such evidence." *LEG Q*, 2017 WL 3780213, at *9 (cleaned up); *In re Thales DIS AIS Deutschland GmbH*, 2022 WL 717280, at *5 (N.D. Tex. Mar. 10, 2022).

The record does not provide authoritative proof that the Ghanaian Courts would reject the requested discovery. The Court acknowledges that the *ex parte* nature of the Application makes the presentation of authoritative countervailing proof less likely. But the Government of Ghana has itself sought discovery under § 1782 for proceedings before the High Court. *See In re Gov't of*

*Ghana*, 2011 WL 3510951 at *6 (E.D.N.C. July 22, 2011) (granting the Government of Ghana's § 1782 application for leave to serve a subpoena); *see Gov't of Ghana v. ProEnergy Servs. LLC*, 2011 WL 2652755, at *4 (W.D. Mo. June 6, 2011) (finding no reliable evidence that the High Court of Ghana would reject evidence obtained under § 1782). Consequently, the Court concludes that the nature of the Ghanaian tribunals, the character of the Ghanaian proceedings, and the receptivity of the government and courts of Ghana to assistance from U.S. federal courts weighs in favor of Petitioners' Application. *See In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F. Supp. 3d 899, 905 (S.D. Tex. 2016) (noting that the second factor favors discovery when the foreign courts at issue "are generally receptive to § 1782 evidence").

      3.      <u>The third discretionary factor</u>

The third *Intel* factor slightly favors the Application. *Intel* makes clear that concerns of comity do not permit the Court to "insert[] a generally applicable foreign-discoverability rule into the text of § 1782." 542 U.S. at 261. Nevertheless, discovery is disfavored where the § 1782(a) request amounts to "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264. Put another way, "while the court should not base its § 1782(a) decision on whether this discovery would be allowed in [the foreign country], it may consider [the foreign country's] restrictions and whether this request is an attempt to thwart those restrictions." *In re Application of RSM Prod. Corp.*, 195 F. Supp. 3d at 906.

In Ghana, the High Court adjudicated Petitioners' motion to produce documents in the Judicial Review Proceedings. ECF No. 10-1. Petitioners' motion sought documents concerning post-drilling data from the Afina Discovery, the MoE's instructions to the Petroleum Commission, the Petroleum Commission's assessment of the post-drilling data, and the MoE's evaluation of the

same. *Id.* The High Court, however, concluded that the motion was "uncalled for" because the tribunal "had all the necessary documents that could drive it to determine the judicial review application." ECF No. 10-6. The High Court reasoned that it could rule "without further demanding any other document(s) from the Parties *especially the Respondent* as prayed for by [Petitioners]." *Id.* (emphasis added). The High Court also took issue with the procedural posture of the motion, as it was not filed "during the legal vacation" and so was "in bad faith." *Id.*

The Court recognizes that pursuing § 1782 discovery after a foreign court dismisses a motion for production implicates the circumvention of foreign discovery restrictions. But the High Court's ruling was cabined to the Judicial Review Proceedings. Here, Petitioners seek discovery for both the Judicial Review Proceedings *and* the Springfield Proceedings. And it is in the Springfield Proceedings that Springfield relied on the evidence sought here. Petitioners' Application is therefore distinct from the motion that the High Court dismissed. What's more, Petitioners' motion in Ghana did not seek the documents that Petitioners request here. It also bears noting that the High Court took issue with Petitioners' request for production from the Attorney General and the Minister of Justice. *See id.* (calling special attention to the fact that the request was directed to the respondents in that case). But the High Court had no occasion to address requests directed to Gaffney Cline and Baker Hughes. The record therefore does not "clearly demonstrate that [Petitioners are] attempting to evade restrictions on discovery in [the foreign tribunal]." *Ecuadorian Plaintiffs*, 619 F.3d at 377.

### 4. <u>The fourth discretionary factor</u>

The fourth factor also favors the Application. A subpoena is facially overbroad where, for example, it seeks: "all documents concerning the parties to the underlying action, regardless of

whether those documents relate to that action and regardless of date; the requests are not particularized; and the period covered by the requests is unlimited." *In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, 2020 WL 13412872, at *6 (S.D. Tex. Apr. 13, 2020) (quoting *MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018)). Petitioners' requests, however, are much more targeted. Petitioners seek (1) a single technical report; (2) the annexes and work product upon which that report relies; and (3) internal communications and instructions about that report among and between its authors and related external communications.[2] The Court therefore concludes that Petitioners' requests are not unduly burdensome. *See id.* (reasoning that a § 1782 petition seeking discovery from more than twenty individuals and twenty business entities was not unduly burdensome where the request was limited to particular types of documents).

5. <u>Summary</u>

In sum, the second and fourth factors clearly favor the Application, while the first and third factors slightly favor it. Accordingly, the Court concludes that the Application is warranted.

**IV.   CONCLUSION**

For the foregoing reasons, the Court determines that Petitioners have satisfied the statutory requirements of 28 U.S.C. § 1782, and that the discretionary factors militate in favor of the Application. The Court therefore **GRANTS** Petitioners' Application. Petitioners may issue and

---

[2] Of course, if any of the materials that Petitioners seek are privileged or otherwise not subject to discovery under the Federal Rules of Civil Procedure, Respondents may file a motion to quash to that end. *See Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 576 (5th Cir. 2016) (adjudicating a motion to quash separate and apart from the underlying § 1782 request).

serve the subpoenas attached to their Application as Exhibits 1 and 2, together with a copy of this Order, in a manner consistent with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 8th day of August, 2022.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE