Case 4:22-mc-01285   Document 79   Filed on 07/30/24 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
July 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ENI GHANA EXPLORATION AND PRODUCTION LTD**, *et al.*, | § § § § | |
| Petitioners, | § § | |
| VS. | § § | MISCELLANEOUS ACTION NO. 4:22-MC-01285 |
| **GAFFNEY CLINE & ASSOCIATES, INC**, *et al.*, | § § § § § | |
| Respondents. | § | |

## MEMORANDUM & ORDER

This miscellaneous action arises from a discovery dispute related to litigation pending in Ghana. The discovery issues have largely been resolved. Currently before the Court is a dispute over whether Intervenor-Respondent Springfield Exploration and Production Limited ("Springfield") made misrepresentations to the Ghanaian court about the nature of the Texas litigation which merit sanctions. Petitioner Eni Ghana Exploration and Production Limited ("Eni Ghana") requests that the Court (1) impose sanctions in the form of attorneys' fees and costs arising from related motion practice and (2) vacate the Protective Order currently in place in this case. ECF No. 75. For the following reasons, the Court finds that modest sanctions are appropriate, but declines to vacate the Protective Order.

I.   BACKGROUND

    a.  **Underlying Litigation in Ghana**[1]

---

[1] Only the underlying litigation related to the present dispute is discussed here. A history of the remainder of the underlying litigation can be found in prior orders.

1

The underlying proceedings involve the unitization of two offshore oilfields in Ghana, one owned by Springfield and one owned by Eni Ghana. Unitization requires owners to jointly develop, operate, and share the proceeds from two or more contract areas as a single unit. This profit sharing is especially consequential where the two fields are of different values.

Springfield petitioned Ghana's Ministry of Energy for unitization of the two oilfields. The Ministry of Energy issued a directive granting Springfield's unitization request, and Springfield filed a suit in Ghana's court system to compel Eni Ghana's compliance with this directive.

Under Ghanaian law, the success of an application for unitization is contingent upon, among other things, the commercial viability of the two fields. In support of its unitization claim, Springfield relied heavily on alleged conclusions from a "Competent Persons Report" prepared by Gaffney Cline and Associates, Inc. (the "Gaffney Cline Report"). It asserted that the Gaffney Cline Report found Springfield's field to have a large untapped oil reserve, which proved commercially viability of the field and, in turn, supported its argument for unitization. However, Springfield refused to produce the Gaffney Cline Report or the data the Report relied on in reaching its conclusions, preventing Eni Ghana from challenging Springfield's assertions.

b. Texas Proceedings

Eni Ghana instigated the present miscellaneous action by filing an *ex parte* application under 28 U.S.C. § 1782 for production of the Gaffney Cline Report and materials related to its preparation. The original Respondents were Gaffney Cline and Associates ("Gaffney Cline") and Gaffney Cline's parent company, Baker Hughes Company. The Court subsequently issued a Memorandum & Order granting Eni Ghana's Application and allowing it to serve subpoenas for the requested documents on Gaffney Cline (the "§ 1782 Order"). ECF No. 19.

Springfield then intervened in this action. Although the discovery was sought from Gaffney Cline, Springfield participated extensively in this action since its interests in unitization were at stake. For example, Springfield moved to quash the subpoenas, filed opposition briefs to Eni Ghana's Motion to Compel, and participated in hearings on these discovery disputes. The Court eventually denied the Motion to Quash and granted the Motion to Compel. ECF No. 49. Gaffney Cline and Baker Hughes produced the report and other responsive documents (collectively "§ 1782 evidence").

Because the resulting documents contained proprietary commercial information, a Protective Order was issued. The parties disputed the terms of the Protective Order. While Eni Ghana agreed to attempt to file the § 1782 evidence under seal in any subsequent litigation, there was a disagreement over what should happen if the Ghanaian courts rejected its motion to file under seal. Eni Ghana contended it should be able to file the documents anyway, while Springfield argued that it should be prevented from filing the documents if they could not be sealed. Because the continued confidentiality of the documents was central to the Court's decision to permit discovery in the first place, the Court sided with Springfield. Accordingly, it included the following provision in the Protective Order: "In the event that a Party's application to file Designated Documents under seal is rejected, then such Party shall not file such Designated Document." ECF No. 61 ¶ 25.

  c. **Eni Ghana's Application to Seal**

Following this saga, Eni Ghana sought to serve a Request to Admit Facts ("RAF") on Springfield in the underlying Ghanaian litigation. That RAF contained information derived from the § 1782 evidence. Under Ghana's procedural rules, Eni Ghana was required to submit the §

3

1782 evidence that was referenced in the RAF. Under the Protective Order, the § 1782 evidence and any submissions incorporating facts from those documents could only be submitted under seal.

As a result, Eni Ghana filed an Application to Seal, which sought to submit the RAF and the § 1782 evidence under seal. Eni Ghana attached as exhibits to its Application the Court's § 1782 Order and Protective Order to explain why a seal was necessary. Despite the fact that Springfield ardently advocated for the Protective Order to require that the § 1782 evidence be filed under seal, it opposed the Application to Seal. Notably, in deciding the Application to Seal, the Ghanaian court could not review the actual RAF or the § 1782 evidence due to the Protective Order. As a result, it had to rely on the parties' characterization of those documents.

In opposing Eni Ghana's Application to Seal, Springfield argued that the application was an improper attempt to enforce the terms of the Protective Order and the § 1782 Order, insinuating that Eni Ghana was seeking to obtain the § 1782 evidence from Springfield despite the fact that it was produced by Gaffney Cline long ago. Springfield also asserted that it was not a party to the Texas litigation, that it was not subject to the orders entered in the Texas litigation, and generally insinuated that it had nothing to do with the Texas proceedings.

The Ghanaian court ultimately denied the Application to Seal and concluded that Eni Ghana "seek[s] an enforcement of the Judgment of the US District Court" without having properly registered the judgment under Ghanaian law. ECF No. 64-5. Eni Ghana's appeal of this ruling is currently pending.

d.  **Subsequent Texas Proceedings**

In late April 2024, Eni Ghana moved the Court to modify the Protective Order given Springfield's strategic use of the Protective Order to preclude the admission of the potentially

4

damaging § 1782 evidence.[2] Specifically, Eni Ghana sought for the Court to strike the last sentence of paragraph 25, which stated, "In the event that a Party's application to file Designated Documents under seal is rejected, then such Party shall not file such Designated Document." In doing so, Eni Ghana argued that Springfield had engaged in misconduct by making false representations to the Ghanaian court about the nature of the Texas proceedings.

The Court granted the motion, struck the relevant sentence, and issued an Amended Protective Order. ECF No. 68. Notably, the Amended Protective Order still states:

> Any Party that intends to file Designated Documents in any Unitization Legal Proceedings may do so provided that such filing specifies that the Designated Documents are confidential and therefore being filed under seal alongside an application to the relevant court or arbitral tribunal for the Designated Documents to remain under seal and any discussion of such Designated Documents be heard in camera and protected from public view.

*Id.* ¶ 25. Following the Court's modification of the Protective Order, it instructed Springfield to respond to the allegations that it had misrepresented facts related to the Texas litigation and brief the issue of sanctions. Springfield and Eni Ghana have now submitted briefing on the matter, ECF Nos. 73-76, and it is ripe for the Court's review.

## II.  STANDARD FOR SANCTIONS

Courts retain the inherent power to sanction misconduct.[3] *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 219 (5th Cir. 2023). "A decision to invoke the inherent power to sanction

---

[2] Springfield's counsel filed a Motion to Withdraw after this case became active again following Eni Ghana's Motion to Modify. However, companies are not permitted to proceed *pro se* in the Fifth Circuit. *See Southwest Exp. Co. v. I.C.C.*, 670 F.2d 53, 55 (5th Cir. 1982) ("The rule is well established that a corporation can appear in a court of record only by an attorney at law."). The Court denied the Motion to Withdraw because Springfield had not found alternative counsel. This is common practice when withdrawal would leave a company without the requisite representation. *See, e.g.*, *Whiteside v. Cimble Corp.*, No. 4:17-CV-404-KPJ, 2021 WL 1163724, at *4 (E.D. Tex. Mar. 26, 2021); *Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co., Inc.*, No. 19-CV-173-DC, 2020 WL 7495611, at *1 (W.D. Tex. Apr. 14, 2020); *My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-535, 2019 WL 2395409, at *7 (E.D. Tex. June 5, 2019).

[3] While a court may also impose sanctions for failure to comply with discovery orders, Springfield does not appear to have violated any discovery order in this case. Fed. R. Civ. P. 37(b). Springfield did not improperly disclose materials in violation of the Protective Order, and it did not fail to produce any

requires a finding of 'bad faith or willful abuse of the judicial process.'" *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997). "[T]he finding of bad faith must be supported by clear and convincing proof." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001); *Nat'l Oilwell*, 68 F.4th at 219. "A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the 'very temple of justice.'" *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997) (quoting *Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991)).

### III. ANALYSIS

The Court finds there to be sufficient evidence of bad faith to warrant imposing modest sanctions. In arguing that the Protective Order should prohibit Eni Ghana from submitting the § 1782 evidence in the Ghanaian proceedings if it could not be filed under seal, Springfield asserted that it was concerned about the disclosure of confidential business information. *See* ECF No. 60 at 3-4. Based on these representations, the Court formulated the Protective Order to provide considerable protection for Springfield's confidential information. Yet, when Eni Ghana attempted to comply with the very provisions of the Protective Order advocated by Springfield, Springfield opposed the Application to Seal. This opposition to the Application to Seal appears to have been motivated by the fact that, under the original Protective Order, if the Application to Seal was denied, the § 1782 evidence could not be submitted at all.

In opposing the Application to Seal, Springfield made several misrepresentations to the Ghanaian court regarding the nature of the Texas discovery proceedings, Springfield's role in them, and the documents underlying them. Despite intervening in the Texas litigation and being an active participant, Springfield represented to the Ghanaian court that it was not a party to this

---

discovery materials subject to the Court's other orders. As a result, sanctions under Rule 37(b) would be inappropriate.

action. Springfield, the Plaintiff in the Ghanaian proceedings, stated in its briefing, "[T]he application [to seal] is premised on a suit which the Springfield is not a party to." ECF No. 64-4 ¶ 7; *see also* ECF No. 64-4 ¶ 4 ("[T]he Plaintiff is not a party to the [Texas] suit."); ECF No. 64-2 ¶ 8 (describing the Texas litigation as "an action commenced by [Eni Ghana] against the said Gaffney Cline and Associates, with the Plaintiff herein not being a party to the said suit"). At best these statements are deeply misleading.[4] At worst, they are outright falsities.

Moreover, Springfield actively misrepresented the scope of the orders in this case, describing the Protective Order and § 1782 Order as "orders made against GCA and not the Plaintiff." ECF No. 64-4 ¶ 10. Springfield later reiterated, "the order(s) being sought to be enforced relate to a third party who is not party to the suit." ECF No. 64-4 ¶ 14; *see also* ECF No. 64-4 ¶ 56 ("[T]he order(s) of the Court relate to the Respondent therein Gaffney Cline and Associates and Baker Hughes Company.").

This is plainly not the case. As already noted, the Protective Order was put in place largely for Springfield's benefit. Springfield was an active participant in the proceedings over the scope of the Protective Order. Springfield's interests were also implicated by the § 1782 Order, as evidenced by the fact that it moved to quash the subpoena issued under the § 1782 Order. ECF No.

---

[4] Springfield argues that, while misleading, it was not technically incorrect to say it was not a party based on the meaning of "party" as used in Ghanaian law. ECF No. 74 ¶¶ 9-11. Of course, there will always be challenges with accurately describing a foreign proceeding when terms are given slightly different meanings in different jurisdictions. However, honest representation is perhaps most critical in such instances, as courts are often at the mercy of the litigants to accurately describe the nature and procedural rules of foreign proceedings. Despite this arguably heightened obligation not to mislead, Springfield opted to insinuate that it had no involvement in or relationship to the Texas proceedings. If Springfield's statements that it was not a party to the Texas proceedings had been an isolated event, it would have perhaps been possible to chalk them up to a technical distinction in the meaning of "party" across jurisdictions. However, when viewed in light of the other misrepresentations discussed below, these misleading statements indicate a bad faith attempt to weaponize the Protective Order, which was put in place for Springfield's benefit, to preclude the admission of potentially harmful evidence.

7

22. To contend that those orders "relate to a third party" and not to Springfield is plainly dishonest and contradicts the representations Springfield made to this Court in those proceedings.

Finally, Springfield's arguments to the Ghanaian court relied on a tacit misrepresentation that Gaffney Cline had not yet produced the discovery documents subject to the § 1782 Order and that Eni Ghana was seeking to obtain those documents from Springfield.

For example, in arguing that Eni Ghana was wrongfully attempting to enforce foreign judgments through its Application to Seal and RAF, Springfield stated, "it is clear that [the § 1782 Order] and [the Protective Order] do not in anyway or manner set out that Plaintiff herein is to produce any documents. It rather places a duty on [Eni Ghana] to subpoena the Respondents in [the § 1782 Order] and [the Protective Order] and to produce the documents granted that they are relevant and admitted under confidentiality." ECF No. 64-4 ¶ 62. Elsewhere, Springfield stated that the § 1782 Order and the Protective Order were "orders made against GCA and not the Plaintiff, it is the GCA who is to appear in Court and produce the documents and not the Plaintiff. The GCA is to produce the documents if and only if it is subpoenaed by the Court." ECF No. 64-4 ¶ 10. Other similar statements are made throughout Springfield's Ghana briefings.

The implicit assumption behind these arguments is that the subpoena had not been issued or complied with, and that Eni Ghana's RAF was made to obtain the documents at issue in the § 1782 Order. This is misleading because (1) the subpoenas were issued long ago and Gaffney Cline has already complied with them by producing the relevant documents—a fact which Springfield is well aware of insofar as Springfield moved to quash the subpoenas—and (2) Eni Ghana was not attempting to get Springfield to produce any documents under the § 1782 Order through its RAF, which the Ghanaian court was unable to determine since the RAF could not be produced for its review under the Protective Order. These statements seem to have led the Ghanaian court to

mistakenly find that Eni Ghana was attempting to force Springfield to comply with the subpoenas mentioned in the Court's § 1782 Order.

Based on this foregoing, the Court finds that Springfield's arguments for certain provisions of the Protective Order were made in bad faith. Further, it finds that Springfield made bad faith misrepresentations regarding the Texas proceedings and its role in them to the Ghanaian court. Accordingly, sanctions in the form of attorneys' fees and costs related to the following proceedings are appropriate: (1) Eni Ghana's Motion to Modify the Protective Order, (2) Springfield's counsel's Motion to Withdraw, and (3) the current proceedings on sanctions. These fees would not have been incurred but for Springfield's bad faith conduct, and thus constitute a reasonable form of sanctions. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 102 (2017).

However, the Court must deny Eni Ghana's request to vacate the Protective Order in its entirety. The Court has already modified the Protective Order in accordance with Eni Ghana's prior motion, removing the stipulation that the § 1782 evidence not be submitted if it cannot be filed under seal. In light of this, the Court finds vacatur of the Protective Order to be unwarranted at this juncture.

## IV.     CONCLUSION

The Court finds that the imposition of sanctions against Springfield pursuant to the Court's inherent powers to be appropriate based on the finding of bad faith discussed above. Sanctions shall take the form of attorneys' fees and costs related to the following proceedings: (1) Eni Ghana's Motion to Modify the Protective Order, (2) Springfield's counsel's Motion to Withdraw, and (3) the current proceedings on sanctions. Eni Ghana is **ORDERED** to submit briefing on the amount of attorneys' fees and costs incurred along with documentation of those fees and costs within seven (7) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed at Houston, Texas on July 30, 2024.

                                                                          Keith P. Ellison
                                                                          United States District Judge