IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ENI GHANA EXPLORATION AND PRODUCTION LTD, *et al.*,<br><br>Petitioners,<br><br>VS.<br><br>GAFFNEY CLINE & ASSOCIATES, INC, *et al.*,<br><br>Respondents. | MISCELLANEOUS Action No. 4:22-MC-01285 |

**PETITIONERS' BRIEF ON ATTORNEYS' FEES AND COSTS**

Eni Ghana Exploration and Production Limited ("Eni") and Vitol Upstream Ghana Limited ("Vitol") (together, "Petitioners") respectfully submit this brief in response to this Court's Order of July 30, 2024 directing Petitioners to submit briefing on the amount of reasonable attorneys' fees and costs incurred along with documentation of those fees and costs.  ECF 79 at 9.

I.   INTRODUCTION

Further to this Court's findings that "Springfield's arguments for certain provisions of the Protective Order were made in bad faith" and "Springfield made bad faith misrepresentations regarding the Texas proceedings and its role in them to the Ghanaian court," ECF 79 at 9, Petitioners now itemize the attorneys' fees actually and reasonably incurred as a direct result of Springfield's bad faith conduct.  This case involves a cross-border commercial dispute in which Petitioners' multi-billion-dollar investment in Ghana is at stake.  Three Crowns (or 3C) is a *Chambers & Partners* Global Band 1 specialist international dispute resolution firm with significant experience representing the world's largest energy companies in cross-border disputes,

1

including 28 U.S.C. § 1782 proceedings. The fees actually billed by 3C reasonably reflect the complexity of the case, which has been vigorously litigated by Springfield since its inception.

## II. ARGUMENT

### A. THE COURT SHOULD AWARD PETITIONERS THEIR FEES AND COSTS IN THE AMOUNT OF $195,136

Courts in the Fifth Circuit calculate attorneys' fees using "the lodestar method—multiplying the number of hours reasonably expended by an appropriate hourly rate." *Cruz v. Maverick County*, 957 F.3d 563, 574 (5th Cir. 2020). "There is a strong presumption of the reasonableness of the lodestar amount." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

#### 1. Three Crowns reasonably expended 276.5 hours

The "number of hours reasonably expended" are based on the attorneys' "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 798 (S.D. Tex. 2009).

Three Crowns reasonably expended 276.5 hours in litigating the Motion to Modify, the Motion to Withdraw, and the current proceedings on sanctions. That figure comprises 80.9 hours by attorney Luke Sobota, 55 hours by attorney Donald Childress, 134.7 hours by attorney Isha Jain, and 5.9 hours by paralegal Shea Adams. Those hours are recorded in detailed, contemporaneous time entries attached as **Exhibit 1** to Mr. Sobota's declaration.

As described in Mr. Sobota's declaration, these hours reflect the time spent by 3C on reviewing the pleadings and court decisions arising out of Eni's Application to Seal in Ghana; consulting with Ghanaian counsel on issues of Ghanaian civil procedure raised in Springfield's opposition to Eni's Application to Seal; considering options for overcoming Springfield's objections to sealing; participating in a meet and confer with Springfield's counsel regarding modification of the

Protective Order, at which Springfield opposed modification; drafting the Motion to Modify the Protective Order and reviewing the supporting declaration from Ghanaian counsel Mr. Kuenyehia; drafting the Response in Opposition to Springfield's counsel's Motion to Withdraw; participating in the hearing on the Motion to Modify the Protective Order and the Motion to Withdraw; drafting the Reply on Sanctions; and participating in the hearing on sanctions. Petitioners are not seeking the fees incurred in drafting the present Brief on Attorneys' Fees and Costs.

**2.      3C's rates are the appropriate hourly rates**

Generally, "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). But if "abundant and uncontradicted evidence prove[s] the necessity of . . . turning to out-of-district counsel," that counsel's "'home' rates should be considered as a starting point for calculating the lodestar amount." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011). "Turning to out-of-district counsel might be necessary, for example, where . . . counsel have shown they participate in a market requiring more specialized and sophisticated legal services." *Franciscan Alliance, Inc. v. Becerra*, 681 F. Supp. 3d 631, 643–45 (N.D. Tex. 2023). Finally, the appropriate hourly rate should take into account "the experience, reputation and ability of the attorney and the skill required by the attorneys." *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 612 (W.D. Tex. 2010).

Here, retention of out-of-district counsel specialized in cross-border disputes was necessary for the following reasons:

- This case spans multiple jurisdictions and legal systems. The parties are based in Ghana, Texas, England, Italy, and the Netherlands. The case involves parallel court proceedings in Texas and Ghana as well as an arbitration based in Stockholm. The case also implicates

3

the laws and legal systems of each of these venues. Petitioners were justified in retaining 3C—an international firm with a U.S. office in Washington, D.C.—given their expertise in similar complex cross-border disputes and § 1782 proceedings. Sobota Declaration at 2-3. At the time of 3C's retention, moreover, it was not clear that this action would be filed in the Southern District of Texas.

- This case involves technical questions regarding the unitization of straddling offshore oilfields in West Africa. Petitioners were justified in retaining 3C, which has developed technical expertise by representing major energy companies in similarly complex disputes. Sobota Declaration at 2.

- This case concerns Petitioners' $3.7 billion investment in the Sankofa Oilfield in Ghana. ECF 2 at 4. Three Crowns has experience successfully litigating similarly high-stakes disputes. Sobota Declaration at 2.

- Three Crowns handled this case efficiently with a team of just three lawyers (a partner, a counsel, and a junior associate) and one paralegal. Sobota Declaration at 7-8.

- Eni has a pre-existing relationship with 3C, which it has retained for other matters starting in 2019. Sobota Declaration at 5. Due to Eni's loyalty, 3C bills Eni and Vitol at significantly discounted "preferred" rates:

| Timekeeper | Role | Preferred Rate ($/hour) |
|---|---|---|
| Luke Sobota | Partner | 1,030 |
| Donald Childress | Counsel | 855 |
| Isha Jain | Associate | 470 |
| Shea Adams | Paralegal | 250 |

For these reasons, Petitioners' retention of an out-of-district international counsel was necessary, and the comparator for purposes of calculating the lodestar should be the market rates of international law firms based in Washington, D.C. offering "similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain*, 649 F.3d at 381.

At least one federal district court in Texas has previously awarded out-of-district attorneys' fees based on Washington, D.C. rates comparable to those charged by 3C in this case. In *Franciscan Alliance*, 681 F. Supp. 3d, the plaintiffs in a religious liberties case sought attorneys' fees at rates of up to $1,000/hour in 2016—eight years ago—based upon their retention of a law firm based in Washington, D.C. Plaintiffs' Memorandum in Support of their Motion for Award of Attorney's Fees and Expenses, *Franciscan Alliance*, No. 7:16-cv-00109-O, ECF 224 at 20 (N.D. Tex. Dec. 23, 2022). In support of their motion for fees, the plaintiffs submitted a declaration from a partner at another Washington, D.C.-based law firm stating that the plaintiffs' attorneys' "rates are lower than the rates my firm and other firms at which I have worked would charge their clients for attorneys of comparable seniority and expertise on a similar matter." Decl. of Gene C. Schaerr, *Franciscan Alliance*, No. 7:16-cv-00109-O, ECF 224-2 at 5 (N.D. Tex. Dec. 23, 2022). The court awarded fees based upon the Washington, D.C. rates because it "was a highly complex case wherein having counsel with specialized expertise in the subject matter was necessary." *Franciscan Alliance*, 681 F. Supp. 3d at 645. Taking note of the declaration, the district court concluded that "the rates proposed by Plaintiffs' counsel are reasonable." *Id.* Considering that the hourly rates of the largest U.S. law firms have increased by over 5% year-on-year in recent

years,[1] the 2016 rates awarded in *Franciscan Alliance* are likely significantly lower than the prevailing 2024 rates.

In a 2021 bankruptcy case, a partner in the Washington, D.C. office of Kirkland & Ellis LLP stated that her firm charges between $1,085-$1,895/hour for law firm partners and between $625-$1,195/hour for associates. Decl. of Erin E. Murphy, *In re: Nat'l Rifle Ass'n. of Am. and Sea Girt LLC*, No. 3:21-bk-30085, ECF 173-2 at 4 (Bankr. N.D. Tex. Feb. 17, 2021). These rates are likely 15% higher today in light of the year-on-year increase of more than 5% for large U.S. law firm rates.[2] This data is consistent with market surveys, which rank Washington, D.C. as "the city with the highest billing rates for litigation in 2023," with a quarter of respondents "billing rates in the range of $951 to over $1,300."[3]

Even if this Court finds that Houston is the relevant market, 3C's rates fall within the range of prevailing rates in that market for similar work by similarly qualified attorneys. In *Ross Dress for Less, Inc. v. ML Development LP*, No. 4:20-cv-978 (S.D. Tex.), the plaintiff sought attorneys' fees based upon a PricewaterhouseCoopers (PwC) Report that recorded the median rates of Houston litigation attorneys in 2021—three years ago—as ranging between $580/hour for a second-year associate to $1,145/hour for an equity partner. Supplemental Brief in Support of Motion for Attorneys' Fees and Expenses, *Ross Dress for Less*, No. 4:20-cv-978, ECF 79-1 at 5-6 (S.D. Tex.

---

[1] Thomson Reuters, *What the "State of the US Legal Market" report showed about law firm billing rate performance in 2023 and where it may go in 2024*, February 5, 2024, available at https://www.thomsonreuters.com/en-us/posts/legal/sotlm-2024-law-firm-billing-rate-performance/ (last accessed August 6, 2024).

[2] *See above* n. 1.

[3] 'DC Litigators Outpaced All Other Cities on Billing Rates in 2023', Law.Com, July 12, 2024, available at DC Litigators Outpaced All Other Cities on Billing Rates in 2023 | National Law Journal (last accessed August 6, 2024); 'This city has the highest billing rates for litigators in nation, survey shows', ABA Journal, July 15, 2024, available at This city has the highest billing rates for litigators in nation, survey shows (abajournal.com) (last accessed August 6, 2024).

6

May 6, 2022). The plaintiff also submitted a declaration from a law firm partner in the Houston office of Gibson, Dunn & Crutcher LLP explaining that his rate was $1,385/hour and that associates in Gibson Dunn's Houston office charge between $800 and $1,000/hour. Declaration of Collin J. Cox, *Ross Dress for Less*, No. 4:20-cv-978, ECF 80-1 at 3 (S.D. Tex. May 6, 2022). Relying on the PwC Report, the court observed that "the adjusted rates charged by Ross's attorneys [i.e., ranging between $608/hour and $918/hour] were, for the most part, on par with the 'median' and 'average' rates for Houston litigation attorneys, working in big law firms, with similar years of experience." Memorandum and Opinion, *Ross Dress for Less*, No. 4:20-cv-978, ECF 82 at 9 (S.D. Tex. July 12, 2022). The court ultimately adjusted the amount downward because the case was a "narrow contract dispute involving a[] [single] plaintiff asserting claims arising from one chain of events," but recognized that "[t]he hourly rates of urban big law firm lawyers, for a large number of lawyers charging a large number of hours may be appropriate for complicated and risky litigations, or large-exposure matters." *Id.*

Similarly, in *CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-182-SDJ, 2023 WL 2746933 (E.D. Tex. Mar. 31, 2023), the district court awarded fees based on hourly rates of $350 for associates to $900 for partners. *Id.* at *9. The court observed that "[a]ttorney's fees are trending upward as more national law firms establish prominent offices in Texas cities" and that "[s]ome Texas lawyers now charge rates above $1,000.00 an hour for complex and high stakes disputes with the top attorneys billing up to $1,400.00 an hour." *Id.* at *7.

In the parlance of the *Ross* case, this is a "complicated" and "large-exposure" matter, and 3C's hourly rates fall within the range of prevailing market rates charged by international law firms in Washington, D.C. and Houston for cross-border commercial disputes. Three Crowns' rates are

7

therefore the appropriate rates for calculating the lodestar. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) ("When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.").

### B.  THE *JOHNSON* FACTORS DO NOT REQUIRE ANY ADJUSTMENT FROM THE LODESTAR

After determining the lodestar amount, district courts employ a 12-factor test derived from *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989), "to determine whether counsel's performance requires an upward or downward adjustment from the lodestar." *Cruz*, 957 F.3d at 574.  Of the 12 factors, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *King*, 744 F. Supp. 2d at 616 (cleaned up).  In the present case, each of these factors weigh in favor of awarding the lodestar amount.

**1. The time and labor required**: As described above, the litigation of the Motion to Modify, the Motion to Withdraw, and the current proceedings on sanctions involved 276.5 hours of work by Three Crowns, reflected in the detailed time entries in **Exhibit 1** to Mr. Sobota's declaration.

**2. The novelty and difficulty of the issues:**  This case involved Springfield's bad-faith misrepresentations to a foreign court in an effort to obstruct the intended use of the § 1782 discovery ordered by this Court.  Exposing this required an explication of Springfield's Ghanaian pleadings and a refutation of Springfield's Ghanaian-law excuses for its falsehoods.

**3. The skill required to perform the legal service adequately:** Three Crowns' work required study of Ghanaian law and procedure on the standards for admitting evidence, the sealing of public records, and the registration and enforcement of foreign judgments.  It also involved a detailed review, analysis, and exposure of Springfield's "bad faith" pleadings in Ghana.  ECF 79 at 9.

8

**4. The preclusion of other employment by the attorney because he or she accepted the case:** The hours spent by 3C's attorneys on this case necessarily reflect time that could not be spent on other cases. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) ("The established rates represent the opportunity cost of what the firm turned away in order to take the litigation.").

**5. The customary fee for similar work in the community:** As described under the lodestar analysis, 3C's fees are within the competitive market hourly rates for cross-border commercial disputes in Washington, D.C. and Houston. The reasonableness of 3C's fees is confirmed by the fact that they were paid by Petitioners, sophisticated consumers of legal services, without any expectation of recovery. Sobota Declaration at 5-6. *See Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *4 (E.D. Tex. May 12, 2016) (considering that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively").

**6. Whether the fee is fixed or contingent:** Three Crowns' fees in this case were charged on an hourly basis for work actually performed and were not calculated on a fixed or contingent basis. There was therefore no "risk of no recovery" or "significant uncertainty" that would justify a downward adjustment of the lodestar amount. *King*, 744 F. Supp. 2d at 615.

**7. Time limitations imposed by the client or the circumstances:** Petitioners have requested that 3C act with alacrity throughout this proceeding given the importance of the § 1782 discovery to defending their multi-billion-dollar investment in Ghana (*e.g.*, work on the Motion to Modify began three days after the rejection of Eni's Application to Seal). **Exhibit 1** to Sobota Declaration.

**8. The amount involved and the results obtained:** Petitioners won favorable rulings in all three of the applications for which they are seeking fees and costs. ECF 68; April 26 minute entry; ECF 79.

**9. The experience, reputation, and ability of the attorneys:** The 3C attorneys handling this case have extensive experience acting for large energy companies in complex, cross-border, multi-billion-dollar disputes, including § 1782 proceedings. Sobota Declaration at 2-4.

**10. The undesirability of the case:** Given the importance Congress has attached to § 1782 discovery, the present case is not "undesirable." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").

**11. The nature and length of the professional relationship with the client:** As explained above, Eni has engaged 3C for various matters since 2019 and 3C therefore bills Petitioners at significantly discounted "preferred" rates.

**12. Awards in similar cases:** As described above in the lodestar analysis, Texas courts have recognized that market rates comparable to those charged by 3C may be warranted in complex commercial litigations such as the present case.

**C.     PETITIONERS ARE ENTITLED TO POST-JUDGMENT INTEREST**

Under 28 U.S.C. § 1961, Petitioners are entitled to post-judgment interest on this award of attorneys' fees. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) ("An award of postjudgment interest is governed by 28 U.S.C. § 1961. . . . This rule also applies to awards of attorneys' fees and costs." (cleaned up)). This interest is "allowable of right, not as a matter of discretion." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). The interest begins to run on the date of "the judgment establishing the right to fees or costs," even if the attorneys fees' are quantified only later. *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544 (5th Cir. 1983) (*en banc*), overruled on other grounds by *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193 (5th Cir. 1986); *La. Power & Light Co.*, 50 F.3d at 332.

10

In this case, the interest began to run from this Court's July 30, 2024 Order. ECF 79 at 9. The post-judgment interest rate on July 30, 2024 was 4.65%.[4] "Interest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b).

## III.  CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court order Springfield to pay Petitioners' attorneys' fees and costs in the amount of $195,136 and post-judgment interest at the rate of 4.65% from July 30, 2024 until paid in full, and award any further relief that this Court deems just and appropriate.

Dated: August 6, 2024

Respectfully submitted,

/s/ *Luke A. Sobota*
Luke A. Sobota
Three Crowns LLP
3000 K Street NW, Suite 101
Washington, DC 20007
(202) 540-9477
luke.sobota@threecrownsllp.com

*ATTORNEY IN CHARGE FOR PEITITIONERS*
*ENI GHANA EXPLORATION AND PRODUCTION LIMITED*
*AND VITOL UPSTREAM GHANA LIMITED*

---

[4] United States District & Bankruptcy Court for the Southern District of Texas, *Post-Judgment Interest Rates – 2024*, available at https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2024 (last accessed August 6, 2024).

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all attorneys of record via the Court's ECF system on this 6th day of August, 2024.

Caroline Upchurch
Forman, Watkins, & Krutz LLP
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
(601) 973-5966
(601) 960-8613 (fax)
E-mail: caroline.upchurch@formanwatkins.com

*ATTORNEY FOR RESPONDENTS*
*GAFFNEY, CLINE & ASSOCIATES INC. AND*
*BAKER HUGHES COMPANY*

Jill Rickershauser Carvalho
Burke Law Group, PLLC
1809 Pearl St.
Austin, TX 78701
832-987-2214
Email: jill.carvalho@burkegroup.law

*ATTORNEY FOR INTERVENOR*
*SPRINGFIELD EXPLORATION*
*AND PRODUCTION LIMITED*

                                                                               /s/ *Luke A. Sobota*
                                                                               LUKE A. SOBOTA