UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ENI GHANA EXPLORATION AND PRODUCTION LTD., *et al.*, § § § § Petitioners, § § VS. § § § GAFFNEY CLINE & ASSOCIATES, § INC., *et al.*, § § Respondents. § § § | MISCELLANEOUS ACTION NO. 4:22-MC-01285 |

**SPRINGFIELD EXPLORATION AND PRODUCTION LIMITED'S
RESPONSE TO PETITIONERS' BRIEF ON ATTORNEYS FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1
ARGUMENT  .......................................................................................................................2

    I.    The Lodestar is Incorrect Because Neither the Rates Nor the Hours Expended Are Reasonable...................................................................................2

        A.  The Hourly Rates Charged Are Much Higher than Prevailing Market Rates and Thus Inappropriate. ............................................................................3
        B.  The Time Expended by Eni and Vitol's Lawyers Was Unreasonable Under Case Law ..................................................................................................6
        C.  The Hours Expended Should Be Adjusted Downward Because Eni and Vitol's Counsel's Billing Judgment is Lacking.......................................10

    II.   Additional Points Regarding Unnecessary Attorneys Fees and Costs ..................12

        A. Analysis of *Johnson* Factors................................................................................12
        B.  Had Eni followed Ghanian procedure, the costs would have been significantly less than $195,136 and the GCA documents could have been admitted..................................................................................................12

    III.  Appropriate Award of Attorneys Fees .................................................................13

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Black v. SettPou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991 (N.D. Tex. July 14, 2014) ....... 9
*Blanchard v. Bergeron*, 489 U.S. 87, (1989) .............................................................................. 12
*Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779 (S.D. Tex. 2021) .................................. 9, 11
*CHU de Quebec – Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-182-SDJ, 2023 WL 2746933 (E.D. Tex. Mar. 31, 2023) ......................................................... 3, 5, 9
*Combs v. City of Huntington, Texas*, 829 F.3d 388 (5th Cir. 2016) ............................................ 3
*Creecy v. Metropolitan Property and Cas. Ins. Co.*, 548 F.Supp.2d 279 (E.D. La. 2008) ......... 8, 9
*El Campo Ventures, LLC v. Stratton Sec. Inc.*, No. 1:20-CV-00560-RP, 2022 WL 1518926 (W.D. Tex. February 1, 2022) ................................................................................................. 1
*Fralick v. Plumbers and Pipefitters National Pension Fund*, 2011 WL 487754 ........................... 9
*Franciscan Alliance, Inc., v. Becerra*, 681 F.Supp.3d 631 (N.D. Tex. 2023) ............................ 3, 4
*Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499 (E.D. La. 2018) .............. 6, 11, 12, 14
*Hilton v. Guyout,* 159 U.S. 113 ..................................................................................................... 1
*Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir. 1974) ............................... 8, 12
*League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228 (5th Cir. 1997) ................................................................................................................. 1
*Neels-Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979 (S.D. Tex. 1997) ................................ 11
*Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, No. H-10-1568, 2012 WL 3234203 (S.D. Tex. Aug. 6, 2012) .................................................................................................................. 11
*Riley v. City of Jackson*, 99 F.3d 757 (5th Cir. 1996) ................................................................ 8, 9
*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019) ....................... 1
*Rouse v. Target Corp.*, 181 F. Supp. 3d 379 (S.D. Tex. 2016) .................................... 8, 11, 12, 14
*Tollet v. City of Kemah*, 285 F.3d 357 (5th Cir. 2002) ................................................................ 3, 4
*Walker v. U.S. Dept. of Housing and Urban Dev.*, 99 F.3d 761 (5th Cir. 1996) ..................... 10, 11
*Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993) ............................................................................. 6

Springfield Exploration and Production Limited ("Springfield") hereby replies to Eni Ghana Exploration and Production Limited ("Eni") and Vitol Upstream Ghana Limited's ("Vitol") Brief on Attorneys Fees and Costs.[1]

**INTRODUCTION**

Attorneys fees and costs must be reasonable to be awarded—whether a law firm submits a bill or a client pays it are not the relevant questions.[2]  Instead, the court considers the hours reasonably expended by attorneys on legal tasks at rates appropriate to the particular legal market. *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).  Eni and Vitol's claimed attorneys fees are inappropriate under Fifth Circuit case law and normal practice because the hours expended are unreasonable and the "preferred rates" submitted by counsel do not accord with the Houston legal market.

For example, Three Crowns presents as a reasonable cost more than $32,000 solely to the *prepare* for the half-hour sanctions hearing, expending nearly 40 total hours of attorney time on the hearing preparation and attendance alone, not the briefing itself.  Mr. Sobota, an experienced lawyer, submitted billing entries showing more than 20 hours of preparation for the short hearing.

---

[1] Springfield respects the Court's Memorandum and Order regarding sanctions and again recognizes its inappropriate representations. Springfield also notes that the sanctions were granted for conduct that occurred exclusively in Ghanaian courts. It is not clear that a United States district court should adjudicate the appropriateness of conduct in the Ghana court, when the Ghanaian court itself has not yet had the opportunity to review the conduct. Because U.S. courts and the United States respect foreign courts and assume they are lawful, it may not be appropriate to comment on conduct that the Ghanaian court will later rule on according to its own laws. *Hilton v. Guyout,* 159 U.S. 113 (the seminal case on international comity states "[c]omity, in the legal sense, is neither a matter of absolute obligation…nor of mere courtesy and good will…[b]ut it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience, and to the rights of its own citizens, or of other persons who are under protection of its laws.").

[2] *Compare El Campo Ventures, LLC v. Stratton Sec. Inc.*, No. 1:20-CV-00560-RP, 2022 WL 1518926 at *2, *6, n.7 (W.D. Tex. February 1, 2022) ("fact finders should be concerned with awarding reasonable and necessary fees, not with any contractual obligations that may remain between the attorney and client") (citing *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502, fn. 13 (Tex. 2019) *with* Eni and Vitol's Brief on Attorneys' Fees at 9 ("[t]he reasonableness of [Three Crown's] fees is confirmed by the fact that they were paid by Petitioners, sophisticated consumers of legal services, without any expectation of recovery").

Three Crowns also submitted a bill for more than $14,000 for a 600-word filing opposing Springfield's former counsel's motion to withdraw, a motion which relied entirely on this Court's Local Rule 83.2. Even accounting for emails back and forth and the additional paragraph arguing that withdrawal would cause delay, Three Crowns was unreasonable to incur costs of any more than $2,500 for such a basic motion. In addition, Eni and Vitol's lawyers billing entries include many showing duplicative work and clerical work that is inappropriately billed, such as 2.9 hours for a senior counsel to finalize and file a motion, and 5 hours for an attorney to prepare exhibits.

Below, Springfield responds to Eni and Vitol's inapposite case law, which in fact supports a much lower award of attorneys fees. Springfield then presents evidence of the prevailing market rate for fees and highlights the excessive, duplicative, and inappropriate hours expended on this portion of the case. The Annotated Billing Index, App. 2, explains why individual billing entries on Eni and Vitol's Exhibit 1 are unreasonable.[3]

Based on Fifth Circuit case law and the normal course of practice of attorneys in this district, the reasonable amount of attorneys fees for Eni and Vitol's counsel at Three Crowns is in the range of $54,081 and $77,258 as further explained below.

**ARGUMENT**

I.  **The Lodestar is Incorrect Because Neither the Rates Nor the Hours Expended Are Reasonable**

In order to determine attorneys' fees, courts in the Fifth Circuit calculate the lodestar by multiplying the reasonable hours expended by a reasonable rate. *Combs v. City of Huntington,*

---

[3] The Annotated Billing Index is a copy of ECF No. 81-1, with two additional columns. The Index adds a number label to each of Three Crowns' billing entries, adding a column with an "Entry Number" to more easily refer to specific entries. For example, Isha Jain includes 6 separate entries on April 21, 2024, so it is difficult to refer to just one of those. The 'Entry No.' column simplifies this discussion. There is also an added column explaining why particular entries are not recoverable under case law.

*Texas*, 829 F.3d 388, 394 (5th Cir. 2016). Neither Eni and Vitol's rate nor their expended hours are reasonable for the reasons discussed below.

**A. The Hourly Rates Charged Are Much Higher than Prevailing Market Rates and Thus Inappropriate.**

Federal courts award attorneys fees based on the "prevailing rate" in "the community in which the district court sits." *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Eni and Vitol argue that their counsel should instead be paid based on Washington, D.C., rates. To justify that position, they cite two cases, both of which are distinguishable. First, Eni and Vitol cite *CHU de Quebec – Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-182-SDJ, 2023 WL 2746933 (E.D. Tex. Mar. 31, 2023), to support their argument that the higher, Washington, D.C., rates are appropriate given their expertise and abilities. But *CHU de Quebec* did *not* given counsel the higher, out-of-market rates that they requested. In fact, they lowered each attorneys' rates by hundreds of dollars. The court acknowledged that the lawyers were competent and belonged to a reputable national law firm, but they failed to show that such "experience and success" justified charging the highest market rates to litigate the particular case. *Id*. at 8*. Below, the rates awarded by *CHU de Quebec* are suggested as benchmarks for the lodestar in this case.

The other case discussed by Eni and Vitol, *Franciscan Alliance, Inc., v. Becerra*, 681 F.Supp.3d 631 (N.D. Tex. 2023). revolves around complex constitutional issues that presented issues of first impression and centered on religious freedom and abortion rights. The court did award significantly higher, out-of-market rates due to the complex nature of the case and given the "controversial subject matter, coupled with the longevity and complexity of the litigation." Further, the plaintiffs in *Franciscan Alliance* provided ample evidence showing they "participate in a market requiring more specialized and sophisticated legal services," the litigation was

complicated by a circuit split, and over twenty government attorneys appeared on the many briefs and motions filed throughout the case. *Id*. at 643, 645.

Here, no controversial subject matters were involved in this litigation. Much of the work performed by the Three Crowns attorneys concerned only straightforward legal issues, including the correct standard for awarding sanctions and local rules regarding withdrawal of counsel. Houston billing rates are thus appropriate.

**1. Houston Market Rates Should Be Used in the Lodestar Calculation**

As described above, there is no reason to depart from the Fifth Circuit's general rule to use the prevailing market rates in the community to calculate the lodestar. *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). An article in *Texas Lawyer* recently reported on a study of billing rates of lawyers in Dallas conducted by Thomson Reuters, titled the "Real Rate Report." (App. 20). The Dallas and Houston legal markets are not markedly different and we have found no other credible summary data.[4]

*Luke Sobota.* The study found that Dallas partners were paid an average of $770 per hour in 2023, so even accounting for some rise in prices since then, an appropriate partner rate is $825. This is $200 less than the "preferred rate" of $1,030 that Three Crown has submitted for Mr. Sobota's work.

*Donald Childress.* Mr. Childress is a full-time, tenured law professor. As discussed further below, the legal complexity related to withdrawal of former counsel and a sanctions motion does not require an expert in international law. The tasks performed by Mr. Childress in this portion of this case seem to be, at most, those performed by a senior associate. The Thomson Reuters Rate

---

[4] Though the Texas Bar previously compiled such information, it no longer does. *See* The State Bar of Texas, Department of Research & Analysis Archives, available at https://www.texasbar.com/AM/Template.cfm?Section=Archives (last accessed August 13, 2024).

Report presented an average rate for *all* associates, at all years of experience, of $525. This presumably includes seven- and eight-year associates, so likely represents a lower than appropriate rate for Mr. Childress. The analysis from *CHU de Quebec* held a "senior associate" could be appropriately billed at $650 and is a reasonable benchmark Mr. Childress, given the types of tasks he performed in this portion of the case.

*Isha Jain*. Both the Three Crowns website and the Sobota Declaration refer to Ms. Jain as a "special legal consultant" at Three Crowns.[5] Ms. Jain's role as a legal consultant is further evidenced by the tasks Ms. Jain completed for the litigation, including implementing edits into a draft, preparing redlines, finalizing exhibits, and filing motions.[6] The briefing does also refer to her as an "associate," and other billing entries suggest she was completing junior-associate level work.[7]

The recent case in the Eastern district, *CHU de Quebec*, awards a "junior associate" a rate of $350 per hour. A "legal consultant" performing the type of work evidenced in her billing entries is likely analogous to a "junior associate," so based on the *CHU de Quebec* case, $375 seems to a be a reasonable rate.

The factors discussed here, the Thomson Reuters Real Rate Report, the recent *CHU de Quebec* case, and a general understanding of rates for basic litigation services in Houston and Texas, suggest that reasonable rates for Eni and Vitol's lawyers at Three Crowns are:

| Attorney and Title | Three Crowns' "Preferred Rates" | Reasonable Rates for the Houston Market |
|---|---|---|
| Luke Sobota, Partner | $ 1,030 | $ 825 |
| Donald Childress, Counsel | $ 855 | $ 650 |

---

[5] *See* Three Crowns, "Isha Jain", available at https://www.threecrownsllp.com/team/isha-jain/ (last accessed August 13, 2024).
[6] *E.g.,* Annotated Billing Index, Entry Nos. 69, 73, 102, 112.
[7] *Id.,* Entry Nos.16, 24, 34, 121.

| Isha Jain, Legal Consultant (website) or Associate (briefing) | $ 470 | $ 375 |
|---|---|---|

**B. The Time Expended by Eni and Vitol's Lawyers Was Unreasonable Under Case Law**

To calculate the lodestar, the court must also determine the "reasonably expended" hours in the portion of case for which attorneys fees have been granted. *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 506 (E.D. La. 2018). "The court should exclude all time that is excessive, duplicative, or inadequately documented." *Gilmore*, 353 F. Supp. at 506.

Eni and Vitol's Exhibit 1 shows questionable billing judgment. Much of the work done by Three Crowns was excessive and duplicative. We describe several instances of this below. The full list is included in the Annotated Billing Index, which notes in the right-most column the particular billing entries that are either excessive, duplicative, or otherwise unreasonable. *See* Annotated Billing Index, (App. 2). That analysis shows that at least there are at 57 hours of duplicative work listed in Eni and Vitol's Exhibit 1 (with 47.2 of those hours performed by Mr. Childress). There are between 50 and 75 hours that should be removed because the work was excessive.

**1. Excessive Work Cannot Be Counted as Reasonably Expended Hours in the Lodestar**

In determining the appropriate attorneys fees, courts in the Fifth Circuit will include only the reasonable hours expended for a task and will exclude all time that is deemed excessive. *Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993). There are several particularly egregious examples of excessive work performed in this case. These relate to Eni and Vitol's opposition to the motion for withdrawal of counsel, the drafting of the brief in support of sanctions against Springfield, and the preparation for the hearing on sanctions.

First, Eni and Vitol's counsel billed 18.5 hours related to opposing Springfield's former counsel's motion to withdraw (Mr. Sobota billed 4.2 hours,[8] Mr. Childress billed 7.9 hours,[9] and Ms. Jain billed 6.4 hours).[10] This was a straightforward motion and the as-filed version was just 600 words long. It could have been drafted by a paralegal; certainly a tenured law professor did not need to work for a full day at $855 per hour on the issue. Even accounting for emails sent and reviewed by all three attorneys on this straightforward issue, Eni and Vitol's counsel should not be afforded more than a few hours of time for this work.[11]

Second, the time spent researching and drafting Eni and Vitol's response regarding sanctions is excessive. Three Crowns reported 60.5 hours total to draft its one, 11-page response in support of sanctions. That response was largely duplicative of its previous filing on the motion to modify the protective order.

Third, the senior partner in the case, Mr. Sobota, spent more than 20 hours preparing for the hearing on sanctions.[12] Together, Eni and Vitol's counsel spent nearly 40 hours preparing for the thirty-minute hearing, after the team had spent more than 60 hours on the briefing itself. This is vastly excessive. During the hearing, Mr. Sobota proffered no new arguments beyond what had been briefed. The motion was not dispositive, and there were only 32 total pages of briefing between Springfield's submissions and Eni and Vitol's response. It is not reasonable for a lawyer with 25 years of experience to require that much preparation.

---

[8] Annotated Billing Index, Entry Nos. 115, 119, 123, 128-29, 130, 139, 143.
[9] *Id.*, Entry Nos. 116, 120, 124, 132.
[10] *Id.*, Entry Nos. 117-18, 121, 125-27, 133, 134-36.
[11] A more reasonable time allotment on this would be 1.5 hours by Mr. Sobota, 0 by Mr. Childress, 2 by Ms. Jain, and 1 by the paralegal Shea Adams. At Three Crowns' "preferred rates," that amounts to $2,735; under the appropriate, prevailing market rate discussed above, that amounts to $2,050.
[12] *Id.*, Entry Nos. 178, 181-84, 189-90, 193-94, 197-98.

Finally, a party may not seek fees for work not expended in pursuit of the result. *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 390 (S.D. Tex. 2016). Eni and Vitol's counsel submitted 2.2 hours of work related to research on enforcement of sanctions—but there has been no indication that Springfield will not pay.[13] Such hours are unnecessary and unrelated to this Court's sanctions orders, and must be removed.

**2. Duplicative Work Cannot Be Recovered as Attorneys Fees**

The Fifth Circuit has long cautioned that "the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir. 1974). "When a party chooses two attorneys to represent it in a lawsuit, the opposing party is not required to pay for duplicative work incurred by the attorneys." *Creecy v. Metropolitan Property and Cas. Ins. Co.*, 548 F.Supp.2d 279 (E.D. La. 2008) (*citing Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)). Eni and Vitol's counsel frequently performed the same tasks, so those duplicative billing entries should not be credited.

The Three Crowns team had both a senior partner and a counsel with decades of experience working on this case. Especially for the issues related to the motion to withdraw and the sanctions briefing, the legal issues were straightforward and two senior perspectives were unnecessary. For example, on two days, April 24 and April 25, Mr. Sobota and Mr. Childress both sent edits to Ms. Jain on the same 600-word filing.[14]

There is other duplicative work. Mr. Childress and Ms. Jain both conducted research on the motion to withdraw.[15] The straightforward motion—which needed only the citation to a local

---

[13] Annotated Billing Index, Entry Nos. 201, 204.
[14] *Id.,* Entry Nos. 119 and 120; 123 and 124
[15] *Id.,* Entry Nos. 116, 118, 120-21.

rule—did not require research from a tenured professor in addition to research from a junior associate.  Under *Creecy* and *Riley*, fees for this duplicative work are not recoverable

In addition, for each motion, multiple lawyers repeatedly revised and edited the briefing. Though not inappropriate on its face, hours are reduced when the "billing entries are likewise peppered with duplicative "reviewing" and "revising" of documents that plaintiff's counsel should have written off as unproductive, excessive, or redundant given his extensive experience." *Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779, 786 (S.D. Tex. 2021).  Here, there are multiple examples of this:

- Revisions to motion to modify: A total of 78.1 hours of revising and editing;[16]
- Revisions to opposition to motion to withdraw: a total of 6.1 hours revising and editing;[17] and
- Revisions to declarations in support of motion to modify: A total of 9.7 hours of revising and editing.[18]

**3. Clerical Work Should Not Be Included as Reasonably Expended Hours**

Any hours billed for clerical or secretarial tasks such as filing, calendaring, and reorganizing case materials are not recoverable as attorneys' fees. *Black v. SettPou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991 (N.D. Tex. July 14, 2014); *see also CHU de Quebec*. at 9*.  Other tasks that are "clerical" include "[p]reparing, assembling, and redacting documents and exhibits". *Bowman,* 568 F. Supp. 3d at 787 (citation omitted).  A number of such 'clerical tasks are included

---

[16] This includes Annotated Billing Index, Entry Nos. 18–23, 30– 32, 45, 47, 49, 51, 55, 69, 73– 74, 81, 89–90, 93, 95, 98–100, 102, 105–09, 111–13.
[17] *Id.,* Entry Nos. 119–120, 123–25.
[18] *Id.,* Entry Nos. 42, 46, 60, 68, 87, 92, 94, 96–97, 104.

in the Annotated Billing Index as attorneys fees—including tasks done at the rate of $855—and must be removed:

- Mr. Childress's filing of the motion opposing withdrawal of counsel;[19]
- Ms. Jain preparing exhibits for the motion to modify;[20]
- Ms. Jain corresponding with the Clerk;[21]
- Ms. Jain's repeated implementation of edits;[22]
- Ms. Jain's scheduling of calls;[23]
- Ms. Jain's preparation of redlines;[24]
- Ms. Jain's coordination of proofreading;[25] and
- Ms. Jain's docketing.[26]

## C. The Hours Expended Should Be Adjusted Downward Because Eni and Vitol's Counsel's Billing Judgment is Lacking

As described above, many of the billing entries in Eni and Vitol's Exhibit 1 are excessive, duplicative, inappropriately billed as legal work, or are unrelated to the relevant issues. Where lawyers seeking attorneys fees do not "present credible evidence of writing off 'unproductive, excessive, or redundant hours,' [courts hold that it] is sufficient to establish a lack of billing judgment for the original attorneys' fees submission*." Bowman*, 568 F. Supp. at 785 (quoting *Walker*, 99 F.3d at 769–70).

---

[19] *Id.*, Entry No. 124.
[20] *Id.*, Entry No. 112.
[21] *Id.*, Entry Nos. 127, 152, 155, 176.
[22] *Id.*, Entry Nos. 21, 322, 55, 69, 73, 81, 105-106, 111, 166, 171.
[23] *Id.*, Entry No. 53.
[24] *Id.*, Entry No. 102.
[25] *Id.*, Entry No. 112.
[26] *Id.*, Entry No. 127.

To account for the lack of billing judgment, courts apply a reduction to the hours expended portion of the lodestar calculation. In the Fifth Circuit, reductions can range from a nominal 15% adjustment to 65%. *See Walker v. U.S. Dept. of Housing and Urban Dev.*, 99 F.3d 761 (5th Cir. 1996); *Gilmore*, 353 F. Supp.3d 499 (E.D. La. 2018). Especially when the billing entries evidence many excessive, duplicative, unnecessary, and otherwise inappropriate tasks, the courts will significantly reduce the hours expended.

In *Gilmore*, the court reduced the requested hours by 65% because of the attorney's excessive hours spent, duplicative work, redundant entries, and non-legal/clerical work 353 F. Supp. 3d at 514 (listing out nearly two dozen problematic billing entries as illustrative of the poor billing judgment). Similarly, in *Rouse v. Target Corp.*, the court reduced the hours expended in its lodestar calculation by 50% because the plaintiff's lawyer included unnecessary, excessive, and duplicative work, and clerical-type work 181 F. Supp. 3d 379, 390 (S.D. Tex. 2016) (listing out a dozen entries as illustrative of the poor billing judgment). *See also Bowman*, 568 F.Supp.3d at 785 (court reduced the hours expended by 40% because plaintiff "failed to present credible evidence of writing off" any unproductive, excessive, and redundant hours and billed inappropriately for clerical work); *Neels-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, n.22 (S.D. Tex. 1997) (court calculated lodestar with a 50% reduction because of time deemed duplicative and "wasted"); *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, No. H-10-1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (court reduced hours by 50% given excessive time spent for issues that "were not novel or particularly difficult.").

Based on the many examples above, and as further documented in the Annotated Billing Index, the hours expended by Three Crowns should be adjusted significantly downward. The

number of problematic billing entries is analogous to the errors made in *Gilmore* and *Rouse,* so the hours should be reduced by between 50% and 65%.

II.     **Additional Points Regarding Unnecessary Attorneys Fees and Costs**

A.  **Analysis of *Johnson* Factors**

After calculating the lodestar amount, Fifth Circuit courts consider the factors first articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, (1989).  Two of the twelve *Johnson* factors bear mentioning here.  First, consideration of factor one, the time and labor required, requires that the lodestar be adjusted down.  As discussed in parts B.1.–B.3. above, this Court should scrutinize the excessive hours billed to certain tasks, the duplication of the Three Crowns team, and the clerical work billed to the client, and adjust the bill down accordingly. Second, consideration of factor two, the novelty and difficulty of the issues involved, requires that the lodestar be adjusted down. This case does not involve any area of first impression.  Further, though the motion to modify the protective order presented some complicated factual issues and details about Ghanaian procedure, the motion to withdraw and motion for sanctions involved uncomplicated issues concerning only U.S. law.  Finally, consideration of factor three, the skill required to perform the legal service adequately, also requires that the lodestar be adjusted down. While competent attorneys, the Three Crowns team has failed to show why this particular case, involving straightforward motions, necessitated the skill and experience of 3C lawyers charging top-market rates.

B.  **Had Eni followed Ghanian procedure, the costs would have been significantly lower.**

The Ghana High Court's order denying the motion to seal the GCA documents rested on two grounds: that Eni failed to follow procedures to register the protective order and that it failed

to include the information about the GCA documents in its pleadings.[27] Both of those deficiencies could have been resolved in the Ghanaian courts for considerably less than the legal costs incurred in the United States.

The Ghana Bar Association publishes ranges of appropriate rates for attorneys. *See* Proposed Scale of Fees from the Ghana Bar Association (App. 22). A "senior counsel," with ten or more years of experience, bills at a rate of $128–255 per hour (or 2,000–4,000 Cedi, Ghana's currency). A counsel with five to nine years of experience bills at a rate of $65–191 per hour (or 1,000–3,000 Cedi). A junior associate bills at a rate of $40–128. While international counsel would have had to sign off on the procedural filings, and even assuming Three Crowns' full "preferred rates," the GCA documents could have been admitted in the Ghana proceedings for well under $25,000.[28]

Springfield understands that the sanctions were imposed for some of the statements made in the Ghanian proceedings and is thus logically separate from the question of whether the underlying issue, i.e. admission of the GCA documents, could have been effectuated. Nonetheless, Eni and Vitol are asking to be paid attorneys fees of more than eight times as much as the legal cost in Ghana, based on Eni's choice to litigate in the United States.

### III. Appropriate Award of Attorneys Fees

To award attorneys fees, the lodestar is calculated by considering the hours reasonably expended by the reasonable market-rate in the relevant legal community. The rates proposed by Eni and Vitol's counsel far exceeds the appropriate rate for Houston. As discussed above, the rates

---

[27] Ghana Court Order, ECF No. 64-5 at 6.

[28] This assumes 10 hours at Three Crowns' top "preferred rate" for Mr. Sobota and 40 hours for the top, senior counsel rate for Ghanian counsel, for a total of $20,500. Doubling those hours, the rate is still far less than Three Crowns' fees for the sanctions briefing and hearing.

should be reduced to match the rates awarded in recent Texas federal cases and in the Thomson Reuters Real Rate Report.

The hours expended are likewise unreasonable. There are clerical tasks included in the requested hours, tasks not related to the issues for which sanctions were granted, and many excessive hours and duplicative work. Notably, the senior partner on the case spent more than twenty hours preparing for the limited, thirty-minute hearing on sanctions is excessive. The tenured professor, a specialist in international law, spent 7.9 hours researching issues related to the motion to withdraw as counsel in federal district court. Many tasks were duplicated by lawyers on the team, as discussed above and noted in Springfield's Billing Index. Three Crowns never adjusted or removed any of its excessive unnecessary, or duplicative entries, illustrating its lack of billing judgement. *Gilmore*, 353 F.Supp.3d at 514. Given the many issues with Eni and Vitol's counsel's billing entries, a significant percentage reduction in hours expended is appropriate. Based on case law such as *Gilmore* and *Rouse*, a reduction of hours by 50% to 65% is appropriate.

With the reduced hours and using the adjusted rates to calculate the lodestar, the attorneys fees awarded to Eni and Vitol should range between $54,081 and $77,258.

**With a 65% Reduction in Hours Expended**

| Name | Requested Hours | Awarded Hours | Awarded Rate | Total Fees |
|---|---|---|---|---|
| Luke Sobota, Partner | 80.9 | 28.315 | $ 825.00 | $ 23,359.88 |
| Donald Childress, Counsel | 55 | 19.25 | $ 650.00 | $ 12,512.50 |
| Isha Jain, Legal Consultant/Associate | 134.8 | 47.18 | $ 375.00 | $ 17,692.50 |
| Shea Adams, Paralegal | 5.9 | 2.065 | $ 250.00 | $      516.25 |
| | | | TOTAL FEES | $  54,081.13 |

**With a 50% Reduction in Hours Expended**

| Name | Requested Hours | Awarded Hours | Awarded Rate | Total Fees |
|---|---|---|---|---|
| Luke Sobota, Partner | 80.9 | 40.45 | $ 825.00 | $ 33,371.25 |
| Donald Childress, Counsel | 55 | 27.5 | $ 650.00 | $ 17,875.00 |

| | | | | |
|---|---|---|---|---|
| Isha Jain, Legal Consultant/Associate | 134.8 | 67.4 | $ 375.00 | $ 25,275.00 |
| Shea Adams, Paralegal | 5.9 | 2.95 | $ 250.00 | $ 737.50 |
| | | | **TOTAL FEES** | **$ 77,258.75** |

## CONCLUSION

Springfield requests that this Court reduce the attorneys fees requested by Eni and Vitol's counsel so that Springfield pays for the reasonably expended hours at the prevailing market rate in Houston. Based on a careful analysis, Springfield believes an appropriate award of attorneys fees is in the range of $54,081 to $77,258.

Respectfully submitted,

/s/ Jill R. Carvalho
Jill R. Carvalho
Attorney-in-Charge
State Bar of TX: 24087266
S.D. Tex. ID: 2888436
**Burke Law Group PLLC**
1809 Pearl Street
Austin, TX 78701
T: (832) 987-2214
F: (832) 793-0056
jill.carvalho@burkegroup.law

***ATTORNEY-IN-CHARGE FOR INTERVENOR SPRINGFIELD EXPLORATION AND PRODUCTION LTD.***

**CERTIFICATE OF SERVICE**

This is to certify that on August 13, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Jill R. Carvalho*
Jill R. Carvalho